In re GRAND JURY PROCEEDINGS
UNITED STATES of America,
Appellant.
In re Grand Jury Proceedings Hector G.

In re GRAND JURY PROCEEDINGS
Hector G. Rodriguez MAR-
TINEZ, Appellant.

Nos. 79–1562, 79–1584.

United States Court of Appeals,
First Circuit.

Argued March 12, 1980.
Decided May 23, 1980.

Jose E. Fernandez Sein, Rio Piedras, P. R., with whom Harvey B. Nachman, Sonturce, P. R., was on brief, for Hector G. Rodriguez Martinez.

William G. Otis, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Jose A. Quiles, U. S. Atty., Old San Juan, P. R., and Pedro J. Durand, Sp. Atty., Miami Strike Force, were on brief, for United States.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZANSKI, Senior District Judge.*

COFFIN, Chief Judge.

In deciding these appeals, we must resolve an important question about the scope of Fifth Amendment protection available to an independent professional practitioner when the grand jury attempts to subpoena his personal business records. The government appeals from an order of the district court quashing a subpoena duces tecum ordering a physician to turn over his appointment logs to the grand jury. The physician appeals from a subsequent district court order that he deposit the logs with the court pending appeal. Although we agree with much of the district court's reasoning, we vacate the order quashing the subpoena. We affirm the district court's order to deposit the records pending appeal.

I.

A federal grand jury in Puerto Rico is investigating alleged illegal payments made by Hospital Sagrado Corazon, a corporation,

* Of the District of Massachusetts, sitting by designation.

to officials of a local labor union. Dr. Hector Rodriguez Martinez is chairman of the hospital's board of directors and an officer of the corporation. The government commanded the doctor to bring to the grand jury, "all appointment books for the years 1975 thru 1978." The government anticipates that these records will disclose the dates of meetings between hospital and union officials.

▪ The doctor moved to quash the subpoena on the grounds that compliance would violate his Fifth Amendment right against self-incrimination.[1] The district court held a hearing on an order to show cause why the subpoena should not be quashed. The evidence presented at the hearing, testimony of the physician and of a former secretary who made the record entries, was directed at establishing the nature of the appointment books and delineating whether they were corporate or personal records. The significance of this latter inquiry arises from the long established rule that the custodian or creator of corporate records enjoys no Fifth Amendment right to resist a subpoena for the records. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). *See also Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (partnership). If the records were those of the physician's private practice, however, the court was required, under *Fisher v. United states*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), to assess the Fifth Amendment rights applicable to the subpoena of such records.

The testimony showed that the records are appointment logs in which the secretary, under the sole direction of the doctor, would note the names of patients who visited the doctor for treatment or consultation, the date of the visit, and the amount of any payment or insurance coverage. Reminders to telephone the doctor's business and personal acquaintances were also included. Occasionally, the doctor would have recorded money paid to family members and the secretary would make notes to herself. The government contended that the appointment logs were corporate records largely on the basis of the financial relationship between the doctor and the hospital: some of the blank books were provided by the hospital, the logs were kept in a private office in the hospital for which the doctor paid no rent, and the entries were made by a secretary whose salary was paid by the hospital. The district court found that the appointment logs were records of the physician's private practice rather than records pertaining to his corporate position.

▪ As an initial matter in this case, we must address the government's argument that the court erred in not finding that the logs were corporate records in which the individual had merely mingled personal entries. The district court's conclusion that the appointment logs were personal business records is a finding of mixed law and fact subject to review under the clearly erroneous standard. *See Sweeney v. Board of Trustees of Keene State College*, 604, F.2d 106, 109 n. 2 (1st Cir. 1979). This standard applies even if the order quashing the subpoena should properly be classified as a criminal proceeding, since the classification was not an ultimate finding of guilt or innocence. *See* 3 C. Wright & A. Miller, Federal Practice and Procedure, § 374. *Cf. United States v. Jobin*, 535 F.2d 154, 156 (1st Cir. 1976) (findings of fact in a pre-trial suppression hearing are binding on appeal unless clearly erroneous).

▪ Here, the district court applied the proper legal standard; it primarily looked

---

1. At the hearing before the district court and in his brief to this court, Dr. Rodriguez argues that the stated purpose of the grand jury investigation is a sham. He contends that the prosecutor is attempting to uncover evidence against him personally and that it is improper to use the grand jury to obtain evidence against a party already indicted and awaiting trial. Examination of the evidence presented to the district court indicates that the doctor has not established the factual predicate of his claim; there has been no showing that the grand jury is not truly investigating Hospital Sagrado Corazon. Nor has it been shown that the indictment of the doctor and the investigation of the grand jury are directed at the same offense. We thus see little merit in the doctor's contention.

to "the nature of the documents and the capacity in which they are held", *Wilson v. United states, supra,* 221 U.S. at 380, 31 S.Ct. at 544; *In re Grand Jury Proceedings,* 349 F.Supp. 417, 418 (N.D.Ohio 1972). Assessing the legal or financial relationship between a doctor and a hospital may be difficult because the doctor's private practice may be performed on the hospital's premises and the hospital may compensate the physician for services to the hospital by providing space and auxiliary service. *See generally Hospital San Jorge v. Secretary of Health, Education and Welfare,* 616 F.2d 580 (1st Cir. 1980). The district court had reasonable grounds for characterizing the business transacted in the doctor's office and memorialized in his logs as a private practice. The logs dealt primarily with payment by patients visiting the doctor for treatment. On this record, we cannot say that the district court clearly erred in concluding that the appointment logs were the doctor's personal business records.

The district court concluded that compelling the doctor to submit personal business records in his possession to the grand jury would violate his Fifth Amendment privilege against compelled testimonial self-incrimination. The court examined Supreme Court precedents and distinguished prior holdings on the grounds that the appointment logs at issue in this case were prepared under the personal supervision of the physician and remained in his possession. Applying the rationales of the prior cases, the court determined that submission of the records would be tantamount to testimony that the documents were authentic and that they were the documents described in the subpoena. To prevent this perceived violation of the doctor's Fifth Amendment right, the court quashed the subpoena. While we agree with the substance of much of the

district court's analysis, we vacate its order and remand for further consideration in light of our examination of the scope of a sole practitioner's Fifth Amendment right when his personal business papers are subpoenaed.

At one time it was thought that the Fifth Amendment prohibited the government from forcing an individual to produce personal papers that might incriminate him. *See Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Such a rule was justified by the person's privacy interest in his own papers—both the embodiment of his own thinking as preserved statements to himself and his private property. *See* Note, *Formalism, Legal Realism, and Constitutionally Protected Privacy Under the Fourth and Fifth Amendments,* 90 Harv.L.Rev. 945, 951–56 (1977).

 Since *Boyd,* the rule has been hedged about with exceptions and its rationales have been rejected. Today, no collective entity, such as a corporation, labor union or partnership, can resist a subpoena for its business records on Fifth Amendment grounds. *See, e. g., Bellis v. United States, supra.* Nor can an individual invoke the privilege if the documents are not in his possession or "constructive possession", *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), or if the documents were prepared by a third party, *Fisher v. United States, supra.* Further, an individual's business records can be seized from his desk by police officers bearing an otherwise valid warrant. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

In *Fisher, supra,* the Court discussed at length the current Fifth Amendment concerns implicated by the subpoena of business documents.[2] The Court stressed that

---

2. We wish to emphasize that this case does not involve subpoena of papers more intimate or personal than business records. The applicability of *Fisher v. United States* to non-business, intimate personal papers such as private diaries or drafts of letters or essays is an open question. *See id.* at 401 n. 7, 96 S.Ct. at 1576 n. 7. There may be additional sources of protection, such as the First Amendment or the per-

sonal autonomy component of the due process clause of the Fourteenth Amendment, which direct that the Fifth Amendment apply to the contents of such writings.

In this case, some few personal notations are mingled in the doctor's appointment logs; however, the prosecutor has disclaimed any desire to obtain such personal information and has asked the court to delete such notations from

the privilege does not protect any privacy interest in the contents of business records, even when written by and for an individual. Rather, the privilege "applies only when the accused is compelled to make a *testimonial* communication that is incriminating." 425 U.S. at 408, 96 S.Ct. at 1579 (emphasis in original). Whatever information the requested documents may contain is irrelevant because creation of the documents was not compelled by the subpoena. *Id.* at 410 n. 11, 96 S.Ct. at 1580 n. 11. The Court's concern was focused on the testimony implicit in the compelled act of producing the documents; it considered whether compliance with the subpoena would constitute evidence admitting the existence of the documents, their identity with the papers designated, or their authenticity. Although it noted that the answer to this inquiry would depend on the facts of each case, the Court was "quite unprepared to hold that either the fact of existence of the papers or of their possession by the taxpayer poses any realistic threat of incrimination to the taxpayer." *Id.* at 412, 96 S.Ct. at 1581. On the facts before it, the Court found no substantial possibility of compelled authentication because the papers at issue were prepared by an accountant rather than by the individual. Left open was the question whether authentication by an individual's produc-

tion of his own business records, prepared by himself, "rises to the level of testimony within the protection of the Fifth Amendment", *Id.* at 411, 96 S.Ct. at 1581. *Id.* at 414, 96 S.Ct. at 1582.[3]

■ The line of cases culminating in *Fisher* have stripped the content of business records of any Fifth Amendment protection;[4] such protection is afforded only to the testimonial content of the act of turning over the records under compulsion. Compliance with the subpoena may admit certain facts, such as the existence of the requested documents, which in most cases will be so trivial that the Constitution is not implicated. In many cases, however, the authentication of the document, which may be proven by an official's testimony that he received them from the individual who prepared and possessed them, will provide a necessary link to incriminating evidence contained in the documents. *See United States v. Plesons,* 560 F.2d 890, 893 (8th Cir.) *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977).

We have little hesitancy in agreeing with the district court that there is a sufficient probability that Dr. Rodriguez's compliance with the subpoena would produce incriminating authentication evidence. If the appointment logs disclose incriminating de-

the logs after an inspection *in camera*. Thus, subpoena of personal, non-business information is not implicated in this case.

3. *Fisher's* narrow focus on the testimonial implications of the act of producing business records, rather than on the private nature of the records themselves, was reiterated in *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). There, the Court upheld the introduction into evidence of a person's business records seized during a search of the person's private office pursuant to a valid warrant. The Court distinguished a search from a subpoena on the basis of testimonial content of the act of turning the records over.

"[A]lthough the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information, *see Fisher v. United States, supra,* a seizure of the same materials by law enforcement officers differs in this crucial respect—

the individual against whom the search is directed is not required to aid in the discovery, production, or authentication of incriminating evidence." *Id.* at 473–74, 96 S.Ct. at 2745.

Thus, but for the compelled authentication implicit in the individual's compliance with the subpoena, the Fifth Amendment is irrelevant to subpoenas of business records.

*See United States v. Abrams,* 615 F.2d 541, 546–47 (1st Cir. 1980), for a discussion of the search warrant requirements in light of *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), and *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

4. We note for the sake of clarity that the property rationale of *Boyd,* resting in part on the Fourth Amendment, was dispatched in *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

tails about meetings with union officials, as the government suspects, the logs would need to be authenticated to be legally relevant. *See generally* 5 Weinstein's Evidence ¶ 901(a)[02]. Because the records were prepared under the doctor's direction and were in his possession, his submission of them to the government would constitute sufficient authentication to allow introduction of the records' content against him.

Our difficulty has not been with identifying the existence of the doctor's privilege, but with fashioning a remedy that would secure to him his right without preventing the government from gaining access to the records' contents, in which he has no constitutionally protected interest. Harmonizing the government's right of lawful access to the contents of personal business records with the possessor's right not to have the testimonial implications of his submission used against him has proven to be the most perplexing aspect of applying *Fisher*. Some courts seem to allow invocation of the Fifth Amendment to defeat entirely a subpoena addressed to the owner and possessor of personal business records. *See United States v. Beattie*, 541 F.2d 329 (2d Cir. 1976); *United States v. Helina*, 549 F.2d 713 (9th Cir. 1977). Other courts have discounted the significance of compelled authentication and have allowed the government to subpoena the records, at least in certain circumstances, without requiring any safeguards for the witness. *See United States v. Authement*, 607 F.2d 1129, 1131–32 (5th Cir. 1979) (per curiam); *Witte v. United States*, 544 F.2d 1026 (9th Cir. 1976); *Fagan v. United States*, 545 F.2d 1005, 1007 (5th Cir. 1977) (dictum).

▪ Entirely to prohibit grand jury subpoena of business records in order to vindicate an individual's right not to have authentication evidence compelled would create an anomalous framework of constitutional protection of business records. *See* Note, *Developments in the Law—Corporate Crime; Regulating Corporate Behavior Through Criminal Sanctions*, 92 Harv.L. Rev. 1227, 1276–86 (1979). Corporate records may be subpoenaed, even when incrim-

inating to the custodian; so may personal business records when not in the possession of the owner; so may records of a sole practitioner when the records were prepared by a third party. Only the personal self-created business records in the possession of a sole proprietor or practitioner would enjoy a privilege against subpoena, although the records themselves are indistinguishable from business records that may be subpoenaed. Such records, enjoying protection only because of the form of business organization chosen by their creator, could, nonetheless, be seized from the proprietor's desk by police executing a valid warrant. Such a rule would create an exempt category of records for no reason related to the character of the records, and prevent the lesser intrusion of subpoena while permitting the greater intrusion of search and seizure. The framework would be erected to protect against compelled disclosure of the authenticity of the records, to the establishment of which fact both the individual and the government will often be indifferent as a practical matter because of remaining untainted evidence of the same fact. The remedy thus afforded would be an irrational hole in the constitutional system of regulation of crime detection and would provide the individual with a remedy far exceeding the scope of his constitutional privilege.

If one recognizes, however, that the subpoenaed party does have a constitutional privilege of some dimension, reliance on the triviality or cumulativeness of the compelled evidence to dispel the threat of constitutional violation seems inappropriately facile. We acknowledge that the government often may have no need to authenticate the records by reference to the party's compliance with the subpoena, *see United States v. Authement, supra*, 607 F.2d at 1132; indeed, in the case before us the government could probably authenticate the records through the testimony of the secretary who made the record entries under the doctor's direction. Nonetheless, if the government *can* use the compelled obedience to prove an incriminating fact, or to discover other incriminating evidence, the

party's constitutional right remains in jeopardy. *See Fisher v. United States, supra,* 425 U.S. at 428–29, 96 S.Ct. at 1589–1590 (Brennan, J., concurring).

■ One approach to harmonizing these discordant interests would permit government subpoena of personal business records, together with an exclusionary rule to prevent government use in any way of the fact that the individual complied with the subpoena. Such a rule, we remain confident, would protect fully the individual's right not to have incriminating testimonial evidence extracted by government and used against him. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Nonetheless, although judicial creation of an exclusionary rule to protect constitutional rights has precedent, *see Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Mur-*

*phy v. Waterfront Commissioner,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), such a rule in this context would amount to a judicial grant of immunity without statutory authorization. The power of courts to grant immunity to witnesses without Congressional authorization is an area of intense debate among the authorities. *See, e. g., Earl v. United States,* 361 F.2d 531 (D.C. Cir.1966); *Virgin Islands v. Smith,* 615 F.2d 964 (3rd Cir. 1980). We need not offer an opinion on the more difficult facets of this debate,[5] however, because the exact circumstances in this case are covered by the general federal immunity statutes, 18 U.S.C. §§ 6002 and 6003,[6] which clearly place in the Department of Justice the authority to immunize testimony to be presented to a court or grand jury. *See United States v. Garcia,* 544 F.2d 681, 685 n.4 (3rd Cir. 1978). Because the federal prosecutor has the authority under the statutes to immunize the

---

**5.** Both *Earl* and *Virgin Islands v. Smith* involved requests to courts by criminal defendants to grant immunity to a witness who could offer exculpatory testimony on their behalf, when the prosecutor had previously refused to grant such immunity. Such a situation raises concerns about a defendant's rights under the compulsory process clause of the Sixth Amendment, which are not raised when the government, which possesses the statutory power to grant immunity, is the party that desires to secure the testimony. We express no opinion on the power of courts independently to grant immunity to a defense witness, but we note that the assumption of such power is not the only means of securing the defendant's Sixth Amendment rights. *See* Note, *The Sixth Amendment Right to Have Use Immunity Granted to a Defense Witness,* 91 Harv.L.Rev. 1266 (1978).

**6.** 18 U.S.C. § 6002 provides:

"Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the

order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order. Added Pub.L. 91–452, Title II, § 201(a), Oct. 15, 1970, 84 Stat. 927." 18 U.S.C. § 6003 provides:

"(a) In the case of an individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

doctor's testimonial communication to the grand jury, the court has no power to immunize that same testimony. *See Ellis v. United States,* 416 F.2d 791, 796–97 (D.C. Cir.1969).

The government has not made any grant of immunity to Dr. Rodriguez in the case before us. It follows that the district court's legal conclusion was essentially correct: the subpoena is presently invalid because it commands testimony, the implied authentication, reasonably thought to be incriminating. Rather than affirm the district court's order, however, we prefer to remand the case for further proceedings because examination of the record discloses that the parties may have been laboring under a misconception about the scope of immunity that must be afforded the doctor to compel his compliance with the subpoena. The government need only immunize that portion of the requested evidence for which a valid claim of immunity has been raised; immunity granted under section 6002 need only be coextensive with the scope of the party's privilege. *See Kastigar v. United States, supra.* The language of section 6002 and its legislative history support this interpretation. The statute prohibits use against the party in a subsequent criminal prosecution of "testimony or other information compelled under the order". "Other information" might be thought to relate to the contents of the records in this case but for the interpretation of the phrase in the legislative history: "Its scope is intended to be comprehensive, including all information given as *testimony* but not orally." H.R. 1549, 91st Cong., 2d Sess.; 1970 U.S.Code Cong. & Admin. News, pp. 4007, 4017 (emphasis added). In *Fisher, supra,* the Supreme Court took pains to indicate that the contents of business records are not "testimony" within the meaning of the Fifth Amendment, any more than are blood samples, *Schmerber v. California,* 384 U.S. 757, 763–64, 86 S.Ct.

1826, 1831–1832, 16 L.Ed.2d 908 (1966), or handwriting exemplars, *Gilbert v. California,* 388 U.S. 263, 265–67, 87 S.Ct. 1951, 1952–1953, 18 L.Ed.2d 1178 (1967). It follows that a grant of immunity to the doctor which precluded subsequent government use of the fact of his compliance with the subpoena would not preclude subsequent government use of the contents of the surrendered documents. The statutory grant of immunity "is intended to be as broad as, but no broader than, the privilege against self-incrimination." H.R. 1549, *supra*; U.S. Code Cong. & Admin.News at 4017.

Examination of the record before us suggests that the government erroneously believed it had to offer the doctor immunity from the use of the contents of the appointment logs to compel their tender. Accordingly, we shall not terminate proceedings in this matter at the present time. We remand the case with instructions to the district court to quash the subpoena unless the government informs the court within a reasonably short time that it has granted Dr. Rodriguez use immunity as to the testimony implicit in the submission of the appointment logs.

We now turn to Dr. Rodriguez's contention that the district court erred in ordering him to deposit his appointment logs with the clerk of the district court pending this appeal. The government requested this order because it feared that the doctor, who was already under indictment for falsifying records, might destroy the logs before its appeal could be consummated. In granting the government's request, the court noted both the need "to preserve the orderly continuation of proceedings," and the lack of any prejudice to the doctor flowing from sequestration of stale appointment books for a short period of time. Before this court, the doctor argues that the logs were his to do with as he wishes and that the district court had no right to deprive him of them.[7]

---

7. The doctor adds another ground of error in the order to deposit the records with the district court. He claims that the government might now illegally seize the logs from the

clerk of the district court pursuant to a search warrant. His basis for the claim is that it happened once in Oregon and was declared illegal. *See United States v. Howell,* 466

Courts issue interim orders, or stay the effect of permanent orders, in many situations in order to maintain the status quo pending appeal. *See* Fed.R.App.P. 8; Fed. R.Civ.P. 62(c) & (d); Fed.R.Crim.P. 38. Here, the court was presented with reasonable grounds to believe that a party might alter the status quo by destroying the records in controversy and frustrating the right of the government to appeal an important question concerning an unsettled area of the law. The witness did not disclaim the intention to destroy the papers, rather he asserted his right to do so. Such action would indeed eviscerate the orderly adjudication of this case. If the court had the power to order sequestration of the documents, it did not abuse its power in so ordering.

■■■ We hold that in these circumstances, the All Writs Act, 28 U.S.C. § 1651(a), conferred authority on the court to require deposit of evidence pending appeal which the witness in possession was reasonably believed to be about to destroy. The All Writs Act provides:

> "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

The Supreme Court has applied the Act flexibly to allow courts to carry out their duties. As the Court recently stated:

> "The power conferred by the Act extends, under appropriate circumstances, to persons who though not . . . engaged in wrongdoing are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *United States v. New York Telephone Co.*, 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977) (citations omitted).

Destruction of the evidence would have marred this court's exercise of jurisdiction, either rendering moot the question today decided or making a mockery of our consideration of the government's case. That notice of appeal had not been filed when the court entered its order is not significant, for the Act contemplates orders aiding appellate jurisdiction even when that jurisdiction is merely potential. *In re Previn*, 204 F.2d 417 (1st Cir. 1953).

■■■ Likewise, we think it irrelevant that the district court entered the protective order in aid of this court's, rather than its own, jurisdiction. The Act clearly gives a court of appeals power to issue orders to preserve its own jurisdiction. Fed.R.App.P. 8 embodies a strong policy that a request for a stay or injunction pending appeal be directed in the first instance to the district court, which is familiar with the controversy and better able to assess potential prejudice to a party from the grant or denial of interim relief. We think the same policy applies to the request for the analogous order in this case.

While we approve the action taken by the district court in this case, we wish to caution the government that the sequestration of the witness' property is an extraordinary procedure proper only in extraordinary circumstances. Depriving a party of his business papers may sometimes work serious harm to the individual and any abuse of the power will be swiftly checked. We emphasize the factors rendering the court's action in this case proper: likely appeal by the government on an unsettled question of law and a reasonable, basis to believe that the party would destroy the evidence forming the center of controversy.

*Affirmed in part, vacated in part, and remanded for further proceedings not inconsistent with this opinion.*

---

F.Supp. 835 (D.Or.1979). This argument is frivolous for the wholly sufficient reason that

no such search and seizure has occurred in this instance.