UNITED STATES of America and Mary
Jane Sciascia, Revenue Agent,
Petitioners,

v.

Dr. Martin FOX, Respondent.

No. M–18–304.

United States District Court,
S.D. New York.

Nov. 4, 1982.

1. All books and records, invoices, statements and other documents pertaining to the operation of the sole proprietorship of Dr. Martin Fox for the period January 1, 1979 to December 31, 1979.

2. All savings account passbooks, brokerage account statements, 1099s, checking account statements, deposit slips, and cancelled checks for the taxpayers Martin and Tamar Fox.

3. All evidence verifying contributions claimed as a deduction on Schedule A of the 1979 tax return of the taxpayers Martin and Tamar Fox.

Fox appeared before a Revenue Agent on February 11, 1982, the date specified in the summons. He failed, however, to produce any of the documents called for by the summons, and also refused to answer any questions asked by the IRS Agent. Fox asserts that his refusal to cooperate with the IRS is justified by his fifth amendment privilege against self-incrimination.

The Second Circuit has recognized that "[e]ven a routine tax investigation is a situation in which answers to questions by an IRS Agent might tend to incriminate, and thus Fifth Amendment rights apply to such answers." *United States v. O'Henry's Filmworks, Inc.,* 598 F.2d 313, 317 (2d Cir. 1979). *See also Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). A blanket assertion of the privilege against self-incrimination, however, is generally an unacceptable method of invoking the privilege before a District Court. *In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 336–37 (3rd Cir.1982); *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir.1981); *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974). Rather, it is incumbent on the witness to make a detailed showing as to why the production of particular documents would constitute compelled, self-incriminatory testimony under the fifth amendment. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish that hazard of incrimination. It is for the court to

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for petitioners; Stephen A. Dvorkin, New York City, of counsel.

Caplin & Drysdale, Washington, D.C., Stillman, Friedman & Shaw, New York City, for respondent; Richard E. Timbie, Scott D. Michel, Washington, D.C., Denise G. Shekerjian, New York City, of counsel.

SOFAER, District Judge:

The government has petitioned the Court to enforce an Internal Revenue Service (IRS) summons served on the respondent, Dr. Martin Fox. 26 U.S.C. §§ 7402(b), 7604(a). The summons called upon Fox to appear before an IRS Revenue Agent and produce the following:

say whether his silence is justified...." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Counsel for Dr. Fox has offered to make the *in camera* showing required. *See In re Katz,* 623 F.2d 122, 126–27 (2d Cir.1980) (remanding for determination of privilege through *in camera* inspection of subpoenaed documents). Before proceeding with an examination concerning self-incrimination, however, the documents sought should first be determined at least potentially protected by the privilege, in that their compelled production would somehow involve testimonial communication.

▪ The taxpayer advances two theories to support his assertion that production of the documents called for by the summons would implicate the privilege. First, he maintains that under *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) the fifth amendment directly protects against the compelled production of an individual's business records. Second, he urges that under *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) the act of producing the documents summoned by the IRS would constitute incriminating testimony as to the authenticity, existence, and location of the documents. Neither of these grounds, however, is even potentially available if the summoned records are "required" by law. The required-records doctrine is therefore an issue that the parties to this proceeding must address.

## I. The Required Records Doctrine

▪ Business records required to be kept by state or federal law are unprotected by the fifth amendment privilege. *Shapiro v. United States,* 335 U.S. 1, 33, 68 S.Ct. 1375, 1392, 92 L.Ed. 1787 (1948). Such documents are treated in the same manner as corporate or partnership records. The privilege against self-incrimination may not be asserted as to their contents or as to the testimonial aspects of producing them. *See In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 336 n. 15 (3rd Cir.1982); *In re Grand Jury,* 601 F.2d 162, 170–71 (5th Cir.1979). The extent to which taxpayer

records required by law should be considered "required records" under *Shapiro* is uncertain. *Compare In re Daniels,* 140 F.Supp. 322, 325 n. 2 (S.D.N.Y.1956) (taxpayer records are not "required records") *with Beard v. United States,* 222 F.2d 84, 93–94 (4th Cir.1955) (taxpayer records are "required records"), *cert. denied,* 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955); *Falsone v. United States,* 205 F.2d 734, 739 (5th Cir.) (same), *cert. denied,* 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953). *See Mertens Law of Fed. Income Tax* § 55A.21 at 126–28. *See also Marchetti v. United States,* 390 U.S. 39, 55–57, 88 S.Ct. 697, 706–707, 19 L.Ed.2d 889 (1968). The government, assuming it wishes to raise this issue, *cf. Stuart v. United States,* 416 F.2d 459, 462 n. 2 (5th Cir.1969) (government has avoided raising "required-records" issue in cases involving taxpayers' records), should identify all arguably relevant statutes, regulations, and authorities. *See, e.g., Mertens, supra,* § 55.28. It should apply the relevant authorities separately to each category of records sought. Thus, for example, a distinction may exist between records necessary to explain specific deductions claimed on a return, and those that might be useful in a general review of the taxpayer's return.

## II. Protection of Testimonial Records

*Boyd v. United States, supra,* held that the fifth amendment protects citizens against the compelled production of private business records. 116 U.S. at 634–35, 6 S.Ct. at 534. *Boyd's* interpretation of the fifth amendment apparently assumed that by producing documents an individual testifies to their contents. In *Fisher v. United States, supra,* however, the Court emphasized that "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating." 425 U.S. at 408, 96 S.Ct. at 1579. Thus, so long as an individual is not compelled by the government to create a particular document, the compelled production of the document, even

if authored by the individual, does not involve compelled testimony as to the contents of the document. 425 U.S. at 410 & n. 11, 96 S.Ct. at 1580 & n. 11. Instead of directly protecting the contents of documents, *Fisher* concluded that the fifth amendment protects against the compelled production of documents only insofar as the act of production may amount to incriminating testimony as to the authenticity, existence, or possession of the documents. 425 U.S. at 410–13, 96 S.Ct. at 1580–82.

*Fisher,* however, involved papers prepared by a taxpayer's accountant, not by the taxpayer himself. The *Fisher* Court ended its opinion by specifically reserving the question whether *Boyd* continues to afford direct protection against the production of a taxpayer's own records. 425 U.S. at 414, 96 S.Ct. at 1582. At least three Circuit Courts have addressed this question after *Fisher.* The Third and Fifth Circuits have concluded that *Boyd* continues directly to protect an individual's tax and business records. *In re Grand Jury Impaneled March 19, 1980,* 680 F.2d 327, 333–34 (3rd Cir.1982); *United States v. Davis,* 636 F.2d 1028, 1042–43 (5th Cir.1981). The First Circuit has held that such records are protected only insofar as the act of producing them constitutes incriminating testimony. *In re Grand Jury Proceedings,* 626 F.2d 1051, 1054–55 (1st Cir.1980).

The Second Circuit has not directly ruled on this question. In *United States v. Beattie,* 541 F.2d 329 (2d Cir.1976) the Court concluded that after *Fisher* a taxpayer could not assert his fifth amendment privilege with respect to letters written to him by his accountant. Relying on *Fisher*'s production-as-testimony rationale, however, the Court held that a taxpayer could assert the privilege as to letters he wrote to his accountant, because by producing those letters "the taxpayer would be authenticating them as fully as if he were producing his retained copies." 541 F.2d at 331. *In re Grand Jury Duces Tecum,* 657 F.2d 5 (2d Cir.1981) held that the fifth amendment protects against the compelled production of pocket diaries and desk calendars if examination reveals them to be personal documents as opposed to corporate records. The Government had asserted that under *Fisher* production of documents never amounts to testimony as to contents and that therefore the diaries and calendars could not be protected by the fifth amendment. In a footnote, the Court disposed of this argument by citing *Beattie* without clarifying the extent to which the Court was still relying on the authentication rationale of the earlier opinion. 657 F.2d at 8 n. 1.

On remand, this Court concluded that the desk calendars were corporate documents unprotected by the fifth amendment. *In re Grand Jury Subpoena Duces Tecum,* 522 F.Supp. 977, 983 (S.D.N.Y.1981). The desk calendars were of a variety not "ordinarily used to record thoughts, impressions, or descriptions of events," and mandating their production was thus "unlikely to pose a substantial threat to the witness's interest in the privacy of his purely personal affairs." 522 F.Supp. at 982–83. As for the pocket diaries, however, although "less obviously testimonial than a conventional diary," they contained "abbreviated entries [that] may say a great deal" about the witness' personal affairs. 522 F.Supp. at 983. In the context of thus protecting personal documents against compelled production, the opinion stated: "When an individual produces a document in response to a subpoena, he not only testifies in the act of producing it; he is forced by that act to provide its testimonial contents as well." 522 F.Supp. at 984; *see Fisher v. United States, supra,* 425 U.S. at 422 n. 6, 96 S.Ct. at 1587 n. 6 (Brennan, J., concurring).

The suggestion that production of a document amounts to testimony as to its contents is confined to the area of purely personal and essentially nonbusiness documents. Only in this area do first amendment values lying at the historical heart of the privilege against self-incrimination, *see Fisher v. United States, supra,* 425 U.S. at 420, 96 S.Ct. at 1585 (Brennan, J., concurring) (authorities collected), require a reading of the fifth amendment that directly protects the contents of a document, as

opposed to indirectly protecting such contents by a "technical and somewhat esoteric focus on the testimonial elements of production," *Fisher v. United States, supra,* 425 U.S. at 431, 96 S.Ct. at 1590 (Marshall, J., concurring). This approach is consistent with the majority opinion in *Fisher.* Apart from specifically reserving the question whether *Boyd* 's interpretation of the fifth amendment might be available to protect directly a taxpayer's own records, 425 U.S. at 414, 96 S.Ct. at 1582, the *Fisher* majority pointed out: "Special problems of privacy which might be presented by subpoena of a personal diary . . . are not involved here." 425 U.S. at 401 n. 7, 96 S.Ct. at 1576 n. 7. The Court further noted: "First Amendment values are also plainly not implicated in these cases." *Id.; see In re Grand Jury Proceedings,* 626 F.2d 1051, 1054 n. 2 (1st Cir.1980). *See generally* Note, *The Rights of Criminal Defendants and The Subpoena Duces Tecum: The Aftermath of Fisher v. United States,* 95 Harv.L.Rev. 683 (1982).

The face of the IRS summons in this case suggests that none of the documents sought is personal in nature. The ordinary records of a sole proprietorship are as much the records of a business as those of a major corporation. Thus, books, invoices, bank records, deposit slips, cancelled checks, and any other record of a doctor's business are normally not entitled to any protection on the basis of their contents. Other records called for by the subpoena, while not kept for business, are not normally prepared by taxpayers, including savings account passbooks, brokerage account statements, and evidence verifying contributions. Conceivably, however, some documents or category of documents called for may be entitled to protection because of their contents. The taxpayer must identify any such document and present his argument for its protection under this rationale.

### III. Protection of Testimony in the Act of Production

Under the taxpayer's second theory of fifth amendment protection, the documents may be indirectly protected by the privilege insofar as the act of producing them might constitute incriminating testimony as to their authenticity, existence, or possession. *See Fisher v. United States, supra,* 425 U.S. at 410–13, 96 S.Ct. at 1580–82. Each of these possibilities raises difficult questions which the parties have not adequately addressed.

### A. Production as Testimony of Authenticity

■ Under *United States v. Beattie, supra,* any documents called for by the summons that were actually written by the taxpayer are potentially protected from compelled production lest by such production the taxpayer be forced to authenticate such documents. By protecting only those letters written by the taxpayer as opposed to letters written to the taxpayer, the Second Circuit in *Beattie* established a clear distinction between documents actually written by the individual claiming the privilege and all other papers, however closely related to records which the summoned party had actually prepared. The taxpayer must show with particularity which if any of the documents sought comes within the protection potentially available under *Beattie.*

The protection afforded by the authentication-as-testimony rationale may be eliminated through grants of immunity in that methods of authentication apart from reference to the source of the document (*e.g.,* identification by an individual other than the subpoenaed party, or identification through handwriting analysis) are readily available in most cases. *See In re Grand Jury Proceedings,* 626 F.2d 1051, 1056–59 (1st Cir.1980). No statute authorizes grants of immunity in relation to IRS summonses, however, and the propriety of allowing nonstatutory immunity to foreclose assertions of fifth amendment privilege is open to question. *See, In re Grand Jury Proceedings, supra.* But *cf. United States v. Mannino,* 635 F.2d 110, 115–16 (2d Cir.1980) (prosecution's introduction into evidence of defendant's seized business record does not violate fifth amendment because document

authenticated by handwriting expert). To the extent incriminating documents actually written by the taxpayer are eventually identified, the government must decide whether to grant a limited immunity against using the taxpayer's act of production to authenticate such records, assuming such a nonstatutory immunity mechanism should be recognized in this Circuit.

### B. Production as Testimony of Existence or Possession

The notion that producing documents might constitute testimony as to their existence or their possession by a subpoenaed party can provide significant protection in some situations. The immunity device has limited utility to the government in that, unlike authentication, the existence and subpoenaed party's possession of documents are facts which may not be easily established without reference to the subpoenaed party's act of producing the documents. *See Fisher v. United States, supra,* 425 U.S. at 434, 96 S.Ct. at 1592 (Marshall, J., concurring). The Second Circuit has recognized that the production of documents may constitute incriminating testimony as to the existence of certain documents in the hands of a summoned party. *In re Katz,* 623 F.2d 122 (2d Cir.1980) held that a subpoena for documents relating to "any company" owned by the witness in effect required testimony as to what companies the witness actually owned. Because the government did not know the identity of these corporations, production of the documents would "add much 'to the sum total of the Government's information.'" 623 F.2d at 126. *See also In re Grand Jury Subpoena Duces Tecum,* 466 F.Supp. 325, 326 (S.D.N.Y.1979) (existence of certain documents would "add[ ] everything" to government's case); *United States v. Karp,* 484 F.Supp. 157 (S.D.N.Y.1980) (witness may not be compelled to admit nonexistence of documents when that "is precisely the fact that the government wishes to establish at trial").

■ The Second Circuit, however, has also recognized that, where the existence of a document is not substantially in question,

the act of production does not constitute testimony under the fifth amendment as to its existence. *United States v. Praetorius,* 622 F.2d 1054, 1062–63 (2d Cir.1979); *see Fisher v. United States, supra,* 425 U.S. at 411, 96 S.Ct. at 1581. Moreover, as the Supreme Court suggested in *Fisher,* questions concerning whether the production of documents constitutes substantial testimony under the fifth amendment as to the existence of such documents "do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." 425 U.S. at 410, 96 S.Ct. at 1580. Among the facts and circumstances of this case, it should be noted that the taxpayer "seeks extensions of constitutional protections against self-incrimination in the very situation where obligations of disclosure exist and under a system largely dependent upon honest self-reporting even to survive." *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973).

■ The Court is not presently convinced that the existence of any or all of the summoned documents is so much in question that production of the documents would constitute substantial and incriminating testimony. For example, the Government is obviously not aware of exactly what books, records, invoices, statements or other documents concerning the taxpayer's sole proprietorship are in existence; however, the government also did not know of the existence of every document among the accountant's workpapers subpoenaed in *Fisher.* Under *Fisher,* it may be sufficient if the Government knows of the existence of the general class of documents demanded. On the other hand, the teaching of *Katz* and other recent decisions appears to be that the Government may not use a subpoena or summons as a method of indiscriminately demanding documents from an individual when it has absolutely no basis for knowing of the existence of the documents, or where the existence of certain documents is somehow vital or peculiarly relevant to the government's case against an individual. For example, to the extent

the taxpayer's return indicates the existence of savings or brokerage accounts, the testimony involved in turning over statements of such accounts and thereby specifically identifying them may be insubstantial; to the extent completely unidentified accounts are sought, however, the government may be seeking the taxpayer's testimony as to the existence of such accounts. Furthermore, the demand for evidence verifying deductions claimed on the taxpayer's return may call for incriminating testimony, inasmuch as the nonexistence of such evidence would be directly relevant to a charge of tax evasion. *See United States v. Karp, supra.*

The parties will begin the process of fully and properly presenting their positions on all these issues by taking the following steps. First, within 10 days of this Order the government will file as detailed a summons as possible, with a view toward establishing the extent of the government's knowledge of the existence and taxpayer's possession of the summoned documents. Second, within 10 days of this Order the taxpayer shall submit *in camera* affidavits detailing which, if any, of the summoned documents were actually written by the taxpayer and which, if any, of the summoned documents are personal in nature. Third, within 30 days of this Order, the parties will jointly file briefs addressing the question whether the required-records doctrine applies to some or all of the documents called for by the present or by any substitute summons. The parties will have one week to respond to each other's papers on this issue. Thereafter, the Court will order such further briefing as may be necessary to establish whether the compelled production of any of the summoned documents would involve testimonial communication. Finally, the taxpayer will be required to make an *in camera* showing that any document or act found to constitute testimonial communication would be incriminating.

SO ORDERED.