UNITED STATES of America and Mary Jane Sciascia, Revenue Agent, Petitioners,

v.

Dr. Martin FOX, Respondent.

No. M-18-304(ADS).

United States District Court, S.D. New York.

Jan. 24, 1983.

See also, D.C., 549 F.Supp. 1362.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for petitioners; Stephen A. Dvorkin, New York City, of counsel.

Caplin & Drysdale, Washington, D.C., Stillman, Friedman & Shaw, New York City, for respondent; Richard E. Timbie, Scott D. Michel and Denise G. Shekerjian, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

This case involves a petition by the Internal Revenue Service (IRS) to enforce a document summons served on the respondent taxpayer, Dr. Martin Fox. The summons called for production of three categories of documents:

1. All books and records, invoices, statements and other documents pertaining to the operation of the sole proprietorship of Dr. Martin Fox for the period January 1, 1979 to December 31, 1979.

2. All savings account passbooks, brokerage account statements, 1099s, checking account statements, deposit slips, and cancelled checks for the taxpayers Martin and Tamar Fox.

3. All evidence verifying contributions claimed as a deduction on Schedule A of the 1979 tax return of the taxpayers Martin and Tamar Fox.

Fox has refused to produce these documents, asserting his fifth amendment privilege against self-incrimination. In a prior opinion, familiarity with which is assumed, the Court indicated that, before requiring the taxpayer to show how producing the summoned documents would threaten incrimination, it would determine whether production of any of the documents would involve testimonial communication. *United States v. Fox,* 549 F.Supp. 1362, 1363–64 (S.D.N.Y.1982). Three areas relevant to this determination were outlined: whether the summoned documents are testimonial records directly protected by the fifth amendment; whether production of the documents would itself constitute testimony; and whether the documents are so-called "required records" automatically unprotected by the fifth amendment. The parties have made submissions concerning these issues as directed by the Court. For the reasons that follow, the summons, except for any documents actually written by the taxpayer, must be enforced; producing the summoned documents will not constitute compelled testimonial communication under the fifth amendment.

■ The summoned documents are testimonial records directly protected against compelled production only if the documents are purely personal and essentially nonbusiness in nature. 549 F.Supp. at 1365–66. The taxpayer's attorney has submitted an *in camera* affidavit identifying various documents which he believes are responsive to the summons and are also purely personal and essentially nonbusiness in nature. None of these documents, however, even remotely involves the taxpayers' recorded thoughts, impressions, or descriptions of events. *Compare In re Grand Jury Subpoena Duces Tecum,* 522 F.Supp. 977, 982–84 (S.D.N.Y.1981) (production of pocket diaries, but not of desk calendars, likely to threaten witness' interest in privacy of purely personal affairs). Therefore, as suggested by the face of the IRS summons, none of the documents sought is purely personal and essentially nonbusiness in nature.

■ The distinction between purely personal and essentially nonbusiness documents, on the one hand, and all other documents, on the other, is separate from the line drawn in fifth amendment doctrine between corporate or partnership records and the business records of an individual or a sole proprietorship. An individual can claim no fifth amendment privilege as to either the contents of or the testimonial aspects of producing partnership or corporate records he may happen to hold. *See Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (partnership records); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (corporate records). All the documents summoned in this case pertain to an individual or sole proprietorship, not a corporation or partnership, so fifth amendment protection is potentially available. But fifth amendment protection is not automatically assured in these circumstances. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), established that the compelled production of an existing document does not generally involve compelled testimony as to the contents of the document. A conflict exists among circuit courts as to whether, despite *Fisher,* the fifth amendment continues directly to protect the contents of an individual's tax and business records, *compare In re Grand Jury Impaneled March 19, 1980,* 680 F.2d 327, 333–34 (3rd Cir.1982); *United States v. Davis,* 636 F.2d 1028, 1042–43 (5th Cir.1981) *with In re Grand Jury Proceedings,* 626 F.2d 1051, 1054–55 (1st Cir.1980), and the Second Circuit has not ruled on this issue. This Court concluded that after *Fisher* the contents of an individual's tax and business records are directly protected only insofar as the summoned records include purely personal and essentially nonbusiness documents. 549 F.Supp. at 1364–66; *see In re Grand Jury,* 626 F.2d at 1054 n. 2 (expressly limiting decision to individual's business as opposed to personal records); *see also In re Grand Jury,* 680 F.2d at 333–34 (recognizing but not adopting distinction between individual's personal and business records). By distinguishing between purely personal,

nonbusiness documents and all other documents, this Court intentionally created a category of documents narrower than all individual or sole proprietorship records. Only the contents of such a narrow category of documents can be afforded direct protection under the fifth amendment in light of *Fisher,* and the distinction is supported by the historical goals and purposes of the privilege against self-incrimination. 549 F.Supp. at 1365–66.

■ The summoned documents may be indirectly protected by the privilege against self-incrimination insofar as the act of producing them might constitute incriminating testimony as to their authenticity, existence, or possession. 549 F.Supp. at 1366–68. Under *United States v. Beattie,* 541 F.2d 329 (2d Cir.1976), an individual can claim that production would amount to authentication testimony, but only as to documents he actually wrote. The taxpayer urges in his supplemental brief that the authentication rationale should extend to documents prepared under an individual's direct supervision and control. *See United States v. Davis,* 636 F.2d 1028, 1043 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). The authentication rationale should not extend any farther, however, than required by the controlling precedent of *Beattie.* Even when limited to documents actually written by the individual, the authentication rationale is an anomalous basis for affording fifth amendment protection in that its availability arbitrarily varies according to the form of business organization under which documents happen to be kept. *See Fisher,* 425 U.S. at 413 & n. 14, 96 S.Ct. at 1582 & n. 14. The taxpayer may therefore assert the privilege against self-incrimination on the basis of authentication only as to documents bearing his own writing.

■ The taxpayer is entitled to no fifth amendment protection based on the notion that his act of production will amount to testimony of the existence or possession of the summoned documents. The government has submitted copies of the taxpayer's 1979, 1980 and 1981 returns along with an affidavit describing their contents. Affidavit of Revenue Agent Sciascia (November 17, 1982). These papers demonstrate that the existence and taxpayer's possession of the three categories of summoned documents are established by other evidence to the point that admitting their existence and possession does not rise to the level of testimony under the fifth amendment. *See Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581; *United States v. Praetorius,* 622 F.2d 1054, 1062–63 (2d Cir.1979). Thus, the government is plainly aware that as a physician operating as a sole proprietor the taxpayer possesses records detailing his business operations. *See* Sciascia Affidavit ¶¶ 4–8. Furthermore, the tax returns indicate that the taxpayer has bank and brokerage accounts. *See* Sciascia Affidavit ¶¶ 10–11. In the context of an IRS audit by Revenue Agents, *see Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973), the testimony implicit in identifying at exactly which institutions these accounts are kept is insubstantial. Finally, the government has ample basis for believing that documents exist verifying contributions claimed on the taxpayer's return. Indeed, the taxpayer specifically indicated on his 1979 return that his claimed cash contributions were supported by "receipts, cancelled checks or other written evidence." *See* Sciascia Affidavit ¶ 9 & Ex. A (1979 Tax Return ¶ 21a).

In its prior opinion the Court suggested that some taxpayer records might appropriately be deemed required records, not entitled to fifth amendment protection. *See* 549 F.Supp. at 1364. Application of the required-records doctrine may well be warranted for categories of documents required to be kept for production in routine audits. *See* Bittker, *Federal Income Tax Returns-Confidentiality vs. Public Disclosure,* 20 Washburn L.J. 479 (1981). The federal income tax laws plainly require taxpayers to maintain records sufficient to enable them to file returns that are correct. 26 U.S.C. § 6001; 26 CFR § 1.446(a)(4). The production of such documents is a routine feature of American life, and a necessary measure

to insure that each American bears the proper burden of his or her citizenship. The inquiry by the IRS to a taxpayer to justify deductions and other claims made on his return is "essentially regulatory"; managing this nationwide task requires "the preservation of records of a kind which the regulated party has customarily kept"; and the records required have great public importance, and should be held to "have assumed 'public aspects,' " because this nation relies upon its taxpaying citizens and residents to assess their own tax liability. *See Grosso v. United States,* 390 U.S. 62, 67–68, 88 S.Ct. 709, 713–14, 19 L.Ed.2d 906 (1968) (setting forth standards for application of required-records doctrine). *But see Application of Daniels,* 140 F.Supp. 322, 326 n. 2 (S.D.N.Y.1956) (required-records doctrine does not apply to income tax records).

The government has not, however, pressed for application of the required-records doctrine. It has argued instead that the doctrine lends additional support to the government's main argument that, after *Fisher v. United States, supra,* the fifth amendment does not protect individual tax records. This position is consistent with an apparently established government policy of avoiding the required-records doctrine in income tax investigations. *See* Department of Justice, *Tax Division Manual for Criminal Tax Trials* 103; *Stuart v. United States,* 416 F.2d 459, 462 n. 2 (5th Cir.1969). Indeed, given the limited protection afforded the summoned documents by the "technical and somewhat esoteric focus on the testimonial elements of production" mandated by *Fisher, see* 425 U.S. at 431, 96 S.Ct. at 1590 (Marshall, J., concurring), there appears to be no occasion to consider definitively a required-records analysis in this case.

The taxpayer is ordered to comply with the summons within twenty (20) days of this Order, except as to documents actually bearing his own writing. These latter documents should be submitted to the Court, with appropriate affidavits detailing how their production to the government might involve self-incrimination, within fifteen (15) days of the date of this Order.

SO ORDERED.