**In the Matter of GRAND JURY SUBPOENA DUCES TECUM SERVED UPON JOHN DOE.**

**No. M–11–188 (KTD).**

United States District Court,
S. D. New York.

Feb. 28, 1979.

----

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States; Michael S. Devorkin, Asst. U. S. Atty., New York City, of counsel.

James M. La Rossa, New York City, for petitioner; Paul B. Bergman, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Presently before me is a motion to quash a subpoena directed against the target of a grand jury investigation. The Government seeks to require the target to produce all records of any kind received from certain named individuals in connection with or reflecting moneys paid or lent to or received from those persons. The investigation apparently involves the illegal payment of moneys by the target, who is a major principal of a stevedoring operation, to labor union officials. Two of the persons whose writings the Government asks the target to produce are such union officials. The other persons are two vice presidents of the stevedoring company, three personal friends of the target and the target's sister-in-law who also happens to be the wife of one of the vice presidents.

The Government invokes the rules laid down in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1975) and *United States v. Beattie,* 522 F.2d 267 (2d Cir. 1975), *modified,* 541 F.2d 329 (1976) in support of the subpoena as issued. By requiring the productions of documents "received" by the target and not documents that he himself has generated, the Government believes it has foreclosed any right the target may have to invoke his Fifth Amendment privilege against compelled self-incrimination. On the other hand, the target argues that *Fisher* and *Beattie* are distinguishable from his case because in neither of those cases was there a question regarding the existence, identity and location of the documents in issue. The target suggests that the very act of producing the documents in this situation would amount to an incriminatory statement and, as such, would violate the Fifth Amendment.

To be sure the target has raised a knotty question. In *Fisher v. United States, supra,* the Supreme Court cutback significantly on the ability of one under subpoena to restrict Government access to documents in one's possession. In that case, it was determined that accountant's work papers, in the possession of the taxpayer to whose tax returns they related, could be subpoenaed from the taxpayer without running afoul of the Fifth Amendment. According to the Court, the subpoenas seeking these records did not compel oral testimony, nor did the act of producing the documents compel the taxpayer "to restate, repeat, or affirm the truth of the contents of the documents sought." *Id.* 425 U.S. at 409, 96 S.Ct. at 1580. The Court recognized nevertheless, that "the act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced." *Id.* at 410, 96 S.Ct. at 1581. Thus, the Court has directed us to look beyond the contents of the document sought as had always been the inquiry, *see, e. g., Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (one may not be compelled to produce one's *private* papers for use at trial), and toward the testimonial elements of production in determining whether or not the Fifth Amendment privilege exists. *See also Andresen v. Maryland,* 427 U.S. 463, 473–74, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1975).

In *Fisher* the Court found that the act of producing the accountant's work papers did not involve testimonial self-incrimination. The existence of the papers was a "foregone conclusion" and the taxpayer's concession that he possessed such papers added "little or nothing to the sum total of the Government's information." 425 U.S. at 411, 96 S.Ct. at 1581. Nor was the taxpayer asked to authenticate the work papers by the act of production since that very act would prove nothing other "than the taxpayer's belief that the papers are those described in the subpoena." *Id.* at 413, 96 S.Ct. at 1582.

The question for my consideration thus narrows down to whether the compelled production of the papers sought herein amounts to " 'responses which are also com-

munications.'" *United States v. Beattie,* 522 F.2d 267, 270 (2d Cir. 1975), *quoting Schmerber v. California,* 384 U.S. 757, 763–64, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). And, of course, to be proscribed by the Fifth Amendment those "communicative responses [must tend] to incriminate" 522 F.2d at 270–71. Were this a situation where the accused was required to produce his personally maintained records, my decision would be somewhat simplified. For as the Second Circuit has observed, requiring the production of one's own papers would be tantamount to asking him "to take the stand and admit their genuineness." *Beattie, supra,* 522 F.2d at 270. Indeed, the only cases I have found following *Fisher* that quashed subpoenas seeking personal records involved documents that were in some manner generated by the person seeking their suppression. *See, e. g., United States v. Beattie,* 541 F.2d 329, 331 (2d Cir. 1976); *United States v. Plesons,* 560 F.2d 890 (8th Cir. 1977); *In re Bernstein,* 425 F.Supp. 37 (D.C.Fla.1977); *In re Grand Jury Subpoena Duces Tecum Served Upon John Doe,* M–11–188 (S.D.N.Y. October 12, 1978) (Sweet, J.). The parties have not cited, nor has my research revealed, any case where the personal records of a grand jury target, although perhaps not self-generated, have been sought by the Government.

Thus, I am faced with a novel question. At oral argument I inquired of the Government what it expects will be produced as a result of its rather broadly worded subpoena. A number of possibilities were suggested, including the existence of a note from one of the labor union officials evidencing a payment by the target to him. Upon questioning, the Government appeared to concede that if the target himself had prepared the note, given it to the union official to sign and then taken it back, this would be a record received from the target that might be exempt from discovery. The fact that the subpoena herein would include such a document leads me to conclude that, at the very least, it is overly broad. However, I am inclined to go one step further and quash the subpoena on the grounds that the act of producing the documents sought would involve testimonial self-incrimination.

During the argument it became clear to me that the existence of the documents in question is not, as in *Fisher,* a "foregone conclusion." Thus, requiring production by the target in this case will impel him to be a witness against himself by forcing him to compile papers and acknowledge their existence. In *Fisher* the taxpayer's concession that he possessed the papers added little or nothing to the Government's case against him. Conversely, in the situation at bar, such a concession adds everything to the case. The target's possession of a note evidencing a debt is substantial evidence that such a debt existed and, in turn, that he committed a crime. Nor, as suggested by Government counsel, would the damage be obviated by presenting the evidence to the grand jury without designating its source. This *deus ex machina* approach cannot cure the constitutional infirmities of the subpoena, since the Government attorney would certainly know the source of the documents. Indeed, the Government's suggestion clearly misconstrues its own function. For what is the meaning of the Fifth Amendment if any citizen can be forced to give self-incriminating testimonial evidence to a Government prosecutor with only a vague assertion that the information will be insulated from all others? In my view this production cannot be compelled absent a grant of immunity.

We are not dealing, in this case, with accountant's work papers which are prepared by the accountant for his benefit to aid in his preparation of tax returns. Rather, the documents sought, if they are as the Government suggests, were prepared for the target's benefit to memorialize transactions in which he engaged. In this sense, they are his personal papers and compelling their production will, in essence, compel him to be a witness against himself, just as it would if his own signature were on the documents. *See In re Grand Jury Subpoena Duces Tecum Served Upon John Doe,* M–11–188 (S.D.N.Y. October 12, 1978) (Sweet, J.).

Accordingly, for the reasons set forth above, the target's motion to quash the subpoena is granted.

SO ORDERED.