**In re Grand Jury Proceedings Gary KATZ, Witness.**

**Benjamin JAMIL, Intervenor-Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 1221, Docket 80-1146.**

United States Court of Appeals,
Second Circuit.

Argued May 14, 1980.

Decided July 1, 1980.

Barry I. Slotnick, New York City (Jay L. T. Breakstone, New York City, of counsel), for intervenor-appellant.

David V. Kirby, Asst. U. S. Atty., Brooklyn, N.Y. (Edward R. Korman, U. S. Atty., Eastern District of New York, Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Gary Katz, an attorney, was served with a subpoena on March 18, 1980 directing him to appear before a grand jury empanelled in the Eastern District of New York which is investigating the unlicensed exports of devices on the Munitions Control List in violation of the Arms Export Control Act of 1954, 22 U.S.C. § 2778. The subpoena required Katz to testify and to bring with him "all documents relating to any dealings or business with CCS, Communications Control Systems, Benjamin Jamil or any company owned, operated or controlled by Benjamin Jamil." Katz, who was thought by the Government to be simply an employee of CCS, actually had served as an attorney for CCS as well as Jamil personally. Katz obtained an adjournment of his appearance before the grand jury from March 21 to

March 25, 1980 and in the interim sought the advice of the Westchester County Bar Association which informed him that compliance with the subpoena would be "unethical" and "improper" under the New York attorney-client privilege statute, N.Y.C.P. L.R. § 4503 (McKinney Supp. Pamphlet 1964–1979).[1]

Upon discovering that Katz had served as an attorney for Jamil and CCS, the Government modified its request. At the March 25 hearing Hon. Henry Bramwell denied Katz' motion to quash the subpoena but orally amended it to require Katz to produce all *public* documents or documents that had come into the *public* record, relating to CCS or Jamil, or any company owned, operated or controlled by Jamil.

Katz failed to appear before the grand jury on April 3, the date set for compliance, and on the same day Jamil moved by order to show cause to intervene and to quash the subpoena.

Oral argument on these motions was conducted on April 7, 1980. The court denied the motion to intervene without explanation and held that the attorney-client privilege does not extend to public documents or records publicly filed and ordered compliance with the subpoena to that extent. Stay of the order compelling production was denied.

On April 9, 1980, appellant applied to this court for a stay of the enforcement order pending resolution of this appeal. The next day attorney Katz appeared before the grand jury and produced some of the requested documents, but handed over to the district court a packet apparently containing the documents that appellant claims are privileged, to be held under seal pending the outcome of the motion for a stay. This court granted the stay on April 22, 1980.

The contents of the packet remain unknown.

I

The Government did not raise any issue of appealability in its brief or on the oral argument of this appeal. It is well settled that the denial of a motion to intervene as of right is an appealable final order under 28 U.S.C. § 1291. *Shore v. Parklane Hosiery Co., Inc.*, 606 F.2d 354, 356 (2d Cir. 1979). The appealability of the denial of the motion to quash is equally clear. Generally, a person who has been served with a subpoena may not appeal an order denying a motion to quash without first resisting and undergoing the penalty of a citation for contempt. *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). However, where the subpoena is directed against a third party, the movant who claims that production of the subpoenaed material would violate his fifth amendment privilege against self-incrimination is permitted an immediate appeal. *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918); *In re Grand Jury Subpoena for New York State Income Tax Records*, 607 F.2d 566, 570 (2d Cir. 1979); *United States v. Guterma*, 272 F.2d 344 (2d Cir. 1959). The theory of immediate appealability in these cases is that the third party will not be expected to risk a contempt citation and will surrender the documents sought, thereby letting the "cat out of the bag" and precluding effective appellate review at a later stage. *Maness v. Meyers*, 419 U.S. 449, 463, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); see *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 95 (1971). Here the cat apparently is still in the bag since the disputed documents are being held under seal in the district court. Cf. *United States v. Lavender*, 583 F.2d 630, 632–33 (2d

---

1. It should be noted that, as this is a federal grand jury proceeding, the federal common law rule of attorney-client privilege applies. Fed.R. Evid. 501, 1101(d); see *In re Grand Jury Subpoena*, 599 F.2d 504, 509 (2d Cir. 1979); *United States v. Kovel*, 296 F.2d 918, 921 n.2 (2d Cir. 1961).

Cir. 1978). The order is therefore now appealable.

The denial of appellant's motion to intervene was error. Fed.R.Civ.P. 24(a)(2) holds that anyone 'shall be permitted to intervene in an action' when

> "the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

■ Appellant's contention that his fifth amendment interests are threatened, and that his attorney cannot be expected to protect those interests by being held in contempt, presents a paradigmatic case of entitlement to intervention as of right. See *In re Grand Jury Proceedings*, 604 F.2d 798, 800–01 (3d Cir. 1979); *Velsicol Chem. Corp. v. Parsons*, 561 F.2d 671, 673 (7th Cir. 1977), cert. denied, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978).

II

The Government argues here that the appellant has asked this court to decide this appeal in a "vacuum" as we have no inkling of what "if anything" may be contained in the packet of documents turned over to Judge Bramwell and now under seal in that court. While this is certainly true it does not follow at all that the appeal is without merit. Even if we were privy to the contents of the packet we could not on the basis of the record before us determine whether Jamil's claim of attorney-client privilege properly attaches and whether his fifth amendment self-incrimination claim has validity, as there has been no hearing to determine the applicability of either privilege to the documents.

■ The Government also urges that the burden of establishing the existence of the attorney-client relationship and its applicability to the particular circumstances presented is upon the party claiming the privilege. We agree and this court has so held. *United States v. Demauro*, 581 F.2d 50, 55 (2d Cir. 1978). However, a reading of the transcript of the April 7 hearing reveals that counsel for Jamil was willing to proceed with a factual inquiry having Katz testify as to the claimed privilege. The court nevertheless took the position that since the subpoena had been amended to limit the production to "public documents," they could never be confidential or subject to the privilege. Therefore, it apparently considered that a factual hearing was unnecessary. Jamil was thus denied the opportunity to satisfy his burden.

It is conceded that Katz must and apparently has surrendered all of those public documents which on their face refer to Jamil or CCS. However, appellant argues that because the amended subpoena calls for the production by his attorney of all public documents in his possession relating to "any company owned, operated or controlled by Benjamin Jamil" it is overbroad and may call for a "testimonial communication" protected under the attorney-client privilege, in violation of the rule announced in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1975) and since followed by this court in *United States v. Praetorius*, 622 F.2d 1054, 1062–63 (2d Cir. 1979); see *Matter of Grand Jury Subpoena Duces Tecum Served Upon John Doe*, 466 F.Supp. 325, 326–27 (S.D.N.Y.1979). This issue was never addressed by the district court.

In *Fisher* the Court recognized that in some situations the "act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced." 425 U.S. at 410, 96 S.Ct. at 1581. See also *Andresen v. Maryland*, 427 U.S. 463, 473–74, 96 S.Ct. 2737, 2744–2745, 49 L.Ed.2d 627 (1976).

Thus, if as the Government suspects, Katz has in his custody certain certificates of incorporation listing only dummy incorporators and not facially indicating any ownership or control by Jamil, their very production under compulsion may be a testimonial and incriminating communication.[2] The act of turning over the documents would constitute a communication by Katz to the effect that appellant was connected with the corporations. Moreover, as the Government obviously does not know the identity of these corporations or appellant's relationship to them, the "existence and location of the papers" is not a "foregone conclusion," and their production may well add much "to the sum total of the Government's information." *Fisher, supra,* 425 U.S. at 411, 96 S.Ct. at 1581. Finally, if the corporations are somehow linked to the scheme under investigation by the grand jury, production may well be highly incriminatory of appellant. In short, disclosure of such documents may well fall within *Fisher's* proscription.

█ Again, we do not know the contents of the packet. But the court below did not discuss the *Fisher* issue, resting instead simply on the proposition that a public document may in no circumstances be subject to the attorney-client privilege. The issue in our view is not resolved that simply. While the instrument may be a public document, Jamil's interest in or relation to the document may well have been confidentially divulged, and its compelled surrender by his attorney *per se* may constitute a testimonial communication that tends to incriminate him.

The Government relies on a line of cases which have held that the disclosure of the identity of a client is not privileged. Thus in *United States v. Pape,* 144 F.2d 778, 782 (2d Cir.), cert. denied, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944), we observed:

The authorities are substantially uniform against any privilege as applied to the fact of retainer or identity of the client. The privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the—at that stage prospective—client. (citations omitted.)

However, this is not the issue here. Jamil is admittedly the client of Katz. The Government is aware of that and is not simply seeking appellant's identity as such but rather what interest that client may have in corporations other than CCS.[3]

█ In *Fisher* the Court indicated that whether the privilege against self-incrimination attaches is not subject to categorical answers but depends upon the facts and circumstances of each case. 425 U.S. at 410, 96 S.Ct. at 1580. Not knowing the facts or circumstances we accordingly remand to the district court to make the two pronged inquiry mandated by *Fisher*:

(1) Would the documents in issue be privileged under the fifth amendment had they remained in the possession of Jamil and had the subpoena been directed to him?

(2) Are they protected by the attorney-client privilege while in the possession of Katz?

2. The subpoena is directed toward Katz, and thus forces the appellant to do nothing. Absent any compulsion appellant can claim no fifth amendment rights. *Fisher* makes clear, however, that documents transferred by a client to his attorney for the purpose of obtaining legal advice are protected by the attorney-client privilege if they would be unobtainable while in the client's possession. *Fisher, supra,* 424 U.S. at 402–05, 96 S.Ct. at 1576–1578; see *United States v. Authement,* 607 F.2d 1129, 1131–32 n.1 (5th Cir. 1979) (per curiam); *Matter of Grand Jury Empanelled February 14, 1978,* 603 F.2d 469, 475 (3d Cir. 1979).

3. We have recognized that information not normally privileged may come within the privilege if disclosure would have the effect of giving testimony which is itself privileged. Thus in *Colton v. United States,* 306 F.2d 633, 637 (2d Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), Judge Lumbard indicated that the identity of an attorney's client, not itself privileged, may become privileged where "the identification of the client may amount to prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source."

The hearing and examination of the packet of materials should be *in camera* and the proceeding itself should be privileged so that whatever testimony is elicited will not constitute a waiver of any right the witness might have. See *Matter of Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 474–75 (3d Cir. 1979). In the alternative, the court may simply limit the subpoena so that it calls only for public documents which (1) relate to CCS or (2) bear the name of Jamil.

So ordered.

LUMBARD, Circuit Judge (dissenting):

I dissent.

The record suggests that public corporate papers for corporations "owned, operated or controlled by Benjamin Jamil" are among the documents which Katz claims are privileged. In my view, the district court may compel an attorney to produce documents or copies of documents which have been filed in a public office. As the law is well-settled that an attorney must disclose the identity of his client or of one who has paid him a fee, *United States v. Strahl*, 590 F.2d 10, 11 (1st Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979); *Matter of Fischel*, 557 F.2d 209, 211–12 (9th Cir. 1977); *United States v. Tratner*, 511 F.2d 248, 252 (7th Cir. 1975); *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973); *Colton v. United States*, 306 F.2d 633, 637, *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), it follows that an attorney must likewise disclose the identity of one who caused the creation and filing of documents in a public office and that he must produce those of such documents, or copies of such documents, as may be in his possession.

The grand jury subpoena, as modified by Judge Bramwell, requires Katz to produce all public documents or documents that have come into the public record relating to CCS, Communications Control Systems, and Benjamin Jamil or any company owned, operated, or controlled by Jamil. By producing such records, the attorney would only be disclosing the acts of his client which have caused certain records to be made public. The attorney would not thereby disclose any communications which are or were intended to be confidential and protected from judicial process. Testimony regarding delivery and filing is simply evidence of an overt act done by the client. In no respect would the attorney be disclosing anything which can fairly be considered to have been a confidential communication. Indeed, the purpose of the client's act is to cause the attorney to do something which is and must be public in order to be effective.

Of course, it is true that responses to a subpoena which calls for such documents may give the grand jury information which it does not already have. Doubtless disclosure and production by an attorney showing that Jamil pays the bill and calls the tune would add to what the government already knows and may be highly incriminating. To enable the government to obtain such evidence is precisely why we have grand juries and why their subpoenas should be enforced unless it is clear that disclosure would impair the salutary purpose of encouraging frank communications between a client and an attorney. In the situation before us, no salutary purpose is served by making it more difficult for the government to find out who is attempting to obtain the advantages of anonymity and secrecy by using the public facility of incorporation. If an attorney must say who paid him money, on what theory can he shield the client who has caused him to obtain the public benefits of incorporation by the public filing? Surely the grand jury may require an attorney who has paid the state a filing fee for a particular incorporation to disclose the name of the client who pays the bill; nor is there any reason why an attorney cannot be required to disclose whatever fees have been paid by that client or other corporation.[1] It simply saves everybody's

---

1. Incorporation in New York, for example, requires the payment of fees to the department of state under N.Y.Exec.Law § 96(9)(b) and N.Y.Tax Law § 180.

time to permit the inquiry to be directed at the outset to the particular party and corporations under investigation. Those who seek the benefits which the laws of our states allow them through the limited liability and the possible tax advantages of the corporate structure should not be heard to complain when a grand jury seeks to determine their activities, or the scope of their corporate-sheltered activities, by directing its inquiries to the one party best qualified to know what has been done publicly and to produce such records.

The investigation of white collar manipulation which engages the attention of law-enforcement officers ought not to be made unnecessarily difficult by specious semantics about confidential communications. I would affirm the order of the district court as modified to relate to all public documents and publicly filed documents caused to be filed by Jamil, CCS, or Communications Control Systems.