**In re Grand Jury Subpoenas Addressed to David J. HEUWETTER, Michael J. Savage, Esq., and Forster & Kadish, Esqs.**

**No. M11–188.**

United States District Court,
S.D. New York.

March 1, 1984.

**120**

Kramer, Levin, Nessen, Kamin & Frankel, Gersten, Savage & Kaplowitz, New York City, for movant Heuwetter; Gary P. Naftalis, Marvin Gersten, Michael H. Barr, New York City, of counsel.

Hale, Russell & Gray, New York City, for movant Savage; Thomas E. Engel, Robert P. Knapp, III, New York City, of counsel.

Henry Putzel, III, New York City, for movant Forster & Kadish.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the Government; Andrew J. Levander, Asst. U.S. Atty., New York City, of counsel.

## OPINION

TENNEY, District Judge.

David Heuwetter ("Heuwetter") is the target of a grand jury that has been empanelled to investigate charges of securities and tax law violations. In August 1983 grand jury subpoenas were served on Heuwetter and his attorneys—Michael D. Savage, Esq. ("Savage"), and Forster and Kadish, Esqs. ("Forster & Kadish")—commanding them to produce the records of several business entities controlled by Heuwetter and the records of various financial transactions involving Heuwetter. Each party has moved for an order to quash pursuant to Federal Rule of Criminal Procedure ("Rule") 17. They assert that the documents requested are protected either by Heuwetter's fifth amendment privilege against self-incrimination or by the attorney-client privilege. Each party has also moved for an order pursuant to Rule 17 to intervene in the motions to quash.

The motions to intervene are granted. For the reasons stated below, Heuwetter's motion to quash is denied, subject to the outlined modifications. The attorneys' motions to quash are denied in part and granted in part, subject to the outlined modifications. Further, the Court reserves decision on the remaining portions of the motions until after the documents specified below have been reviewed *in camera*.

## BACKGROUND

A grand jury empanelled in the Southern District of New York is investigating the collapse of Drysdale Securities Corporation ("DSC") to determine whether any federal securities or tax laws have been violated. Heuwetter has been associated with DSC since 1976, and was in charge of its government securities and municipal bond trading operations. In February 1982 Heuwetter and Joseph E. Ossorio, the chairman of the board of DSC, incorporated Drysdale Government Securities, Inc. ("DGSI") for the purpose of accommodating Heuwetter's government trading activities. Heuwetter is the only stockholder of DGSI. Heuwetter's relationship with DSC, however, did not end, and he remained head of its trading desk at 61 Broadway, New York. On May 17, 1982 Heuwetter publicly announced that DSC could not pay approximately $160 million of interest due and owing to bankers and other entities that had loaned money to Heuwetter and DSC.

Subsequently, after a grand jury investigation was commenced, subpoenas were issued to Heuwetter and two of his attorneys, Savage and Forster & Kadish. Savage, who is a member of the firm of Gersten Savage & Kaplowitz, has been Heuwetter's tax attorney for a number of years and, in addition, has represented him and a few of his companies in a number of corporate matters and in at least one litigation. Forster & Kadish have represented Heuwetter on a wide variety of matters.

The Heuwetter subpoena [1] requires him to produce the records of sixteen corpora-

---

1. The Heuwetter subpoena required, in pertinent part, the following:

 A. For the following entities:
 Lauren Morgan Company; Morgan Lauren Company; Heuwetter & Company; Drysdale-Heuwetter Company; Fixed Income Performance Systems; Fixed Income Research Systems Technology; Micro Associates; Heuwetter Winston Company; Drysdale Fixed Income Securities, Inc.; D.J. Wetter, Inc.; C.W.H. Systems, Inc.; O.W.H. Systems, Inc.; Oshewa; Drysdale Securities Corporation; Drysdale Government Securities, Inc.; Software Management Systems, Inc.; and, all predecessor, successor, affiliated and subsidiary entities and divisions of each of the foregoing entities.

 B. Production of the following documents is required:
 Originals, or if originals are not available such copies as are available, of any and all books, records, and documents of whatever description, including but not limited to the following:
 (a) records of any and all business conducted; including but not limited to notes, memoranda, correspondence, telexes, telephone logs, telephone bills and records, diaries and calendars used in connection with the business, officers', employees' and agents' personal files, contracts, bills, receipts, invoices, purchase orders, shipping records, price lists, brochures, financial statements, accounting and inventory records;

tions and partnerships[2] that he has been associated with, including the records of "all predecessor, successor, affiliated and subsidiary entities and divisions of each." Savage and Forster & Kadish received similar subpoenas[3] except that, in addition, their subpoenas request the production of documents belonging to Heuwetter and his sole proprietorship, Fixed Income Government Securities ("FIGS"). Each subpoena also requests a list of all documents being withheld under a claim of privilege. To date only Forster & Kadish have produced such a list.

> (b) corporate records; including but not limited to certificates of incorporation or partnership, minute books, corporate resolutions, stock certificates and records, corporate kit, corporate seals and stamps, shareholder lists, any lists of officers, employees and agents; and all evidence of the names of the principals or owners of the entities;
> (c) bank, brokerage and other financial records; including but not limited to account statements, cancelled checks, deposit tickets, transaction tickets, confirmations, credit and debit memoranda and advices, wire transfers; promissory notes, loan agreements and any and all records pertaining to any and all advances of credit or payments or disbursements to or from the entities;
> (d) records pertaining to any and all local, state and federal tax returns or liability, including but not limited to partnership and corporate tax returns, payroll tax returns, payroll Forms W-2, W-3, W-4 and Forms 1099;
> (e) evidence of any and all transactions engaged in by David J. Heuwetter for or on behalf of the entity, whether conducted in his own name or in the name of the entity, including but not limited to any and all checks or withdrawals of funds drawn by David J. Heuwetter on any bank account of any of the entities.
> C. If any items called for by this subpoena are withheld based upon a claim of privilege or otherwise, state the basis for such withholding and identify the nature of each such item by date, author, and recipient if any, and general contents so as to allow the matter to be litigated.

**2.** *See supra* note 1.

**3.** The Savage subpoena required the production of:
> Any and all records, including checks, check stubs, accountant records, tax records, non-privileged correspondence, bills, invoices,

## DISCUSSION

### A. *Heuwetter's motion to quash on the ground of fifth amendment privilege*

Recognizing that a long line of cases hold that records or documents of a corporation or partnership are not protected by an individual's fifth amendment privilege against self-incrimination, *see, e.g., Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Curcio v. United States,* 354 U.S. 118, 77 U.S. 1145, 1 L.Ed.2d 1225 (1957); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed.

> contracts, agreement, records of sale, transfer records, deeds, mortgage papers, bank records, or any other records reflecting money transfers or property transfers, or money, income, or property involving David J. Heuwetter, Heuwetter & Co., Drysdale-Heuwetter Co., FIGS, FIPS, FIRST, Drysdale Securities Corp., and Drysdale Government Securities, Inc., and Micro Associates.

By letter dated December 5, 1983 the parties agreed to amend the subpoena to include the eight other entities listed in Heuwetter's subpoena.

The Forster and Kadish subpoena required the production of:
> Any and all records, including but not limited to all billing records, payment records, statements, tax records, tax returns, invoices, bills, ledgers, loans, loan agreements, contracts, leases, bank records, checks, employment records and correspondence involving or relating to any of the following individuals or entities:
> David J. Heuwetter
> Rosalinda Heuwetter
> Lauren Morgan Company
> Morgan Lauren Company
> Heuwetter & Company
> Drysdale-Heuwetter Company
> Fixed Income Government Securities Inc.
> Fixed Income Performance Systems
> Fixed Income Research Systems Technology
> Micro Associates
> Heuwetter Winston Company
> Drysdale Fixed Income Securities Inc.
> D.J. Wetter, Inc.
> C.W.H. Systems Inc.
> O.W.H. Systems Inc.
> OSHEWA
> Drysdale Security Corporation
> Drysdale Government Securities, Inc.

By phone, on December 16, 1983 the parties agreed that Software Management Systems, Inc. would be added to the above list.

1542 (1944); *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), Heuwetter does not argue that the *contents* of the documents are protected by his fifth amendment privilege. Instead, he contends that the documents the Government seeks are shielded by the "act of production" doctrine. This doctrine, which under certain circumstances brings corporate and partnership documents back within the ambit of an individual's fifth amendment privilege, was recently confirmed by the Court in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In *Fisher,* a tax evasion case, the subpoena required the production of an accountant's work papers, which were in the hands of the client's attorney. The Court noted that the mere act of producing documentary evidence has communicative aspects that can amount to compulsory self-incrimination because "[c]ompliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena." *Id.* at 410, 96 S.Ct. at 1580 (citation omitted). As the second circuit recently explained, under the act of production doctrine compliance with a subpoena duces tecum can amount to incriminatory testimony in violation of an individual's fifth amendment right in two situations:

> (1) if the existence and location of the subpoenaed papers are unknown to the government, then the [individual's] compelled production of those documents "tacitly concedes the existence of the papers demanded and their possession or control by the [individual]," ... and (2) where the [individual's] production of documents may "implicitly authenticate" the documents and in so doing provide a link in the chain of incrimination.

*United States v. Fox,* 721 F.2d 32, 36 (2d Cir.1983) (citations omitted). The *Fisher* Court, however, held that the documents in that case were not protected by Fisher's fifth amendment privilege. The Court noted that the accountant's work papers unquestionably existed and were in his attor-

ney's possession, and that the production of them would not authenticate the documents because they had been drafted by a third party. 425 U.S. at 412–13, 96 S.Ct. at 1581–82.

In this circuit, the act of production doctrine was applied by the court in *In re Katz,* 623 F.2d 122 (2d Cir.1980). In that case a subpoena duces tecum had been served on an attorney requiring the production of documents in his possession relating to named and unnamed corporations allegedly owned by his client. The court observed that the "very production under compulsion may be testimonial and incriminating communication." *Id.* at 126. Significantly, in its analysis the court noted that the Government clearly did not know the identity of some of the corporations. Thus, the court found that for these entities "the 'existence and location of the papers' is not a 'foregone conclusion,' and their production may well add much 'to the sum total of the Government's information.'" *Id.* (quoting *Fisher, supra,* 425 U.S. at 411, 96 S.Ct. at 1581). *See also United States v. Fox, supra.* The *Katz* case was remanded to the district court for factual findings.

More recently, the court in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983,* 722 F.2d 981 (2d Cir.1983), held that a former corporate president, who had absconded with some corporate documents upon leaving the corporation's employment, had gained personal possession of the documents and could invoke the act of production doctrine. The court noted that "[t]he *Fisher* doctrine simply does not turn on either content or authorship of the documents; it is the fact, and the circumstances, of *possession* that are controlling." *Id.* at 987 (citation omitted) (emphasis in original). The court remanded the case for a determination "whether appellant's production of the [corporate] documents, regardless of their contents, might have the self-incriminatory effect ascribed thereto by appellant." *Id.*

Applying the above criteria, the Court now holds that Heuwetter clearly may not evoke the act of production doctrine to shield any of the pre-existing documents or records requested by the subpoena. Here, unlike the situation in *Katz*, all the corporations and partnerships are identified in the subpoena. Heuwetter does not claim that the entities do not exist. Furthermore, unlike the situation in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983, supra,* Heuwetter is not claiming that he absconded with documents or that the documents are now in his personal possession. He also does not assert that he has no association with any of the entities or that he has no custodial responsibilities over the documents in his corporate representative capacity. Furthermore, since he is a corporate official he can not contend that his production of the documents will authenticate them. *See Fisher, supra,* 425 U.S. at 413, 96 S.Ct. at 1582. And, contrary to Heuwetter's argument, the instant case is not governed by *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983* because a number of the entities listed in the subpoena are "inactive" or "defunct." The status of the entity does not determine whether the act of production doctrine applies. *See Fisher, supra; In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983, supra.*

As the second circuit pointed out in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983,* "[i]t is true that if the witness were still [an] officer or employee he would normally be obligated as a representative of the company to produce its documents, regardless of whether they contained information incriminating him or were written by him as a corporate officer." *Id.* at 986 (citation omitted). Indeed, if the Court were to apply the act of production doctrine on the facts of the instant case it would be abrogating the general rule that "an officer has 'no personal right to retain the corporate books against any demand of government which the corporation was bound to recognize.'" *Id.* at 986 (quoting *United States v. Beattie,* 522 F.2d 267, 272–73 (2d Cir.1975)). *See also Wilson v. United States, supra.*

The individual seeking the application of a privilege bears the burden of establishing a valid claim of privilege. *See, e.g., United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983); *In re Grand Jury Subpoena Duces Tecum,* 697 F.2d 277, 279 (10th Cir.1983). Heuwetter has failed to sustain that burden with respect to his fifth amendment claim. In short, he has failed to demonstrate how this case is any different from the numerous cases in which it has been held that corporate or partnership representatives must produce documents subpoenaed by a grand jury. *See Fox, supra,* 721 F.2d at 35–36 (citing cases). The Court thus concludes that "the possession and production of documents by the person subpoenaed [will] add 'little or nothing to the sum total of the Government's information.'" *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983,* 722 F.2d at 987 (quoting *Fisher, supra,* 425 U.S. at 411, 96 S.Ct. at 1581).

There is, however, some merit to Heuwetter's contention that the subpoena is overly broad because it requires him to produce not only documents relating to the sixteen entities listed in the subpoena but also documents relating to "all predecessor, successor, affiliated, and subsidiary entities and divisions." The production of any *predecessor, successor* or *affiliated* entities, that are not listed in the subpoena and that are completely separate entities from the listed entities, i.e. those which are not subsidiaries or divisions of the named entities, would infringe upon Heuwetter's fifth amendment privilege because it would require him to affirm the existence of these entities and their documents. *See Katz, supra.* The subpoena, therefore, is modified to exclude the above underscored language. In addition, it is unreasonable for the subpoena to have no time limit. The

subpoena is modified to require only the production of documents existing on or before the date the subpoena was served on Heuwetter.

Accordingly, with these modifications, Heuwetter must comply with the subpoena and produce all the pre-existing documents relating to the sixteen entities. The Court does not agree that the subpoena is otherwise overly broad.

### B. Documents within the possession of Heuwetter's attorneys

The subpoenas served on Forster & Kadish and Savage require the production of all papers or records of the sixteen entities that are in the attorney's possession and that are not privileged. In addition, the subpoenas require the production of any and all nonprivileged documents relating to FIGS and Heuwetter, himself. As noted above, Savage, a tax attorney, has represented Heuwetter in a tax suit and a number of other civil matters, and is currently representing Heuwetter in part in a number of ongoing criminal investigations. Savage's law firm, Gersten Savage & Kaplowitz, currently represents DGSI, and D.J. Wetter, Inc., two of the sixteen enti-

ties listed in the subpoenas. *See supra* note 3. Forster & Kadish represented Heuwetter in a number of civil transactions. The firm is not involved in any of the criminal matters.

The documents requested from the attorneys can be divided into three groups. They are (1) pre-existing documents belonging to one of the sixteen entities, (2) pre-existing documents belonging to FIGS or Heuwetter, and (3) documents created by the attorneys or by the clients for the attorneys. Savage[4] contends that the requested documents are shielded from production by either Heuwetter's fifth amendment privilege against self-incrimination, or the attorney-client privilege or the work product privilege.[5]

### 1. Pre-existing documents belonging to one of the sixteen entities

■ Citing *Fisher, supra*, 425 U.S. at 404, 96 S.Ct. at 1577, Savage correctly contends that, if these documents are protected by Heuwetter's fifth amendment privilege against self-incrimination, his attorneys, having possession of the documents, do not have to produce them. Since the Court has held that these documents are

---

**4.** Forster & Kadish have adopted the arguments submitted by Savage and Heuwetter. *See* Affidavit of Henry Putzel, III, Esq., sworn to December 16, 1983 ("Putzel Aff."), ¶ 12, and, unless otherwise noted, reference to arguments against the subpoenas raised by Savage or Heuwetter apply as well to the subpoena served on Forster & Kadish.

**5.** An overarching argument presented by the attorneys is that compliance with the subpoenas would interfere with the attorney-client relationship that exists in several ongoing criminal matters. Citing *In re Special Grand Jury No. 81–1 (Leon D. Harvey)*, 676 F.2d 1005, 1009–10 (4th Cir.), *withdrawn*, 697 F.2d 112 (4th Cir.1982), they argue that the Court should require a preliminary showing of need and relevancy. While the Court is quite cognizant of the sensitive relationship between attorneys and clients in pending criminal investigations, no such showing of need and relevancy is required in this circuit, *see, e.g., In re Horowitz*, 482 F.2d 72, 81 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Colton v. United States*, 306 F.2d 633, 636–37 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963),

nor should it be. *See In re Grand Jury Proceeding*, 721 F.2d 1221, 1223 (9th Cir.1983).

To be sure, there are situations where an attorney should not have to respond to a subpoena, *see, e.g., In re Grand Jury Subpoena*, 438 F.Supp. 1176 (S.D.N.Y.1977); *In re Terkeltoub*, 256 F.Supp. 683 (S.D.N.Y.1966), but this is not one of them. Here the attorneys who have received subpoenas have represented Heuwetter for several years in various matters touching on the events under investigation. Indeed, in a number of matters the attorneys may not have been functioning in a legal capacity, *see* Affidavit of Gary Maeurer, IRS Revenue Agent, sworn to January 23, 1984, and hence, not even the attorney-client privilege would be available. Accordingly, the Court finds that it would be inappropriate to shield all the documents requested on the ground that their production would interfere with the attorney-client relationship.

The Court also finds that there is no merit to Heuwetter's contention that his sixth amendment right to counsel has been infringed upon by the service of subpoenas on his attorneys. *See United States v. Vasquez*, 675 F.2d 16, 17 (2d Cir.1982).

*not* protected by Heuwetter's fifth amendment privilege, the pre-existing corporate and partnership documents called for in the subpoena must be turned over to the grand jury. *See Fisher, supra,* 425 U.S. at 403–05, 96 S.Ct. at 1577–78. Savage also contends that some of these documents are protected by either the attorney-client privilege or the work product privilege. Any documents falling into this category shall be treated like the documents discussed below in section B.3.

### 2. *Heuwetter's and FIGS's documents*

The movants, relying on *Bellis v. United States, supra,* 417 U.S. at 87–88, 94 S.Ct. at 2182–83, argue that since FIGS is a sole proprietorship, which for fifth amendment purposes is treated like an individual, the contents of its documents are shielded from production. They also claim that Heuwetter's personal documents are covered by this privilege. They argue further that under *Fox, supra,* 721 F.2d at 37–40, both the Heuwetter and FIGS documents are protected under the act of production doctrine.

The Government counters by arguing that after *Fisher* the contents of business records are no longer shielded and that the instant case is distinguishable from *Fox.* The Government points out that in *Fox,* the IRS sought documents from a sole proprietor relating to unknown bank accounts and business transactions. Here, in contrast, the Government argues that there is no question about the existence of FIGS since Heuwetter filed a business certificate in New York. Government's Memorandum in Opposition to the Motions to Quash the Subpoenae ("Government Memo."), at 40.

The Government contends, moreover, that "there is little or no doubt that FIGS's only business 'transactions' were with DSC, DGSI and related entities and that its only bank account was with the Chemical Bank." *Id.* at 40. Thus, the Government implies that there is no question as to the existence of FIGS's business records and documents.

The Government, cognizant that the act of producing these documents would authenticate them, *see Fox, supra,* 721 F.2d at 36, has offered to immunize the movants' act of production and is prepared to authenticate the documents through other means.

Notwithstanding the above assertion regarding the business transactions of FIGS, no evidence is before the Court demonstrating that any of these business documents exist.[6] While most sole proprietorships undoubtedly maintain standard business records, the extent, existence and location of these records are matters of individual preference. Unlike corporate and partnership documents, which may be presumed to exist because they are maintained pursuant to federal and state law and the organization's own bylaws, there is no presumption that such documents exist where a sole proprietorship is concerned. More important, unlike corporate documents, which are held in a custodial capacity, sole proprietorship documents are considered to be in the individual's personal possession even after they have been transferred to an attorney. *See Fisher, supra,* 425 U.S. at 403–04, 96 S.Ct. at 1577.

 While there is no question that FIGS exists as a sole proprietorship, this is not enough to affirm the existence of any documents. *See United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (available March 1, 1984, on WESTLAW, SCT library); *Fox, supra,* 721 F.2d at 37–38. In *Doe,* an opinion issued two days ago, the Supreme Court made it clear that while the *contents* of sole proprietorship documents are not shielded from production, these documents may still be shielded by the act of production doctrine, unless the Government makes a formal statutory offer of immunity. *See Doe, supra.* Thus, the Court concludes that the

---

**6.** The Court refused to accept an *ex parte* affidavit from the Government on the date of the hearing in this case.

Government, by calling for the production of "[a]ny and all records" involving FIGS from both law firms, without specifying who has what, is clearly uncertain about the existence of the documents and that the forced production of these papers "may compel the [movant] to add to the 'sum total of the Government's information.'" *Fox, supra,* 721 F.2d at 38. This would force Heuwetter, the sole proprietor of FIGS, to become an informant against himself. The Government's limited nonstatutory offer of immunity, under the circumstances of this case, would not eliminate this problem. *See Doe, supra,* 104 S.Ct. at 1243.

The same rationale, of course, applies to all of Heuwetter's personal documents that are within his attorneys' possession. The Court therefore rules that the pre-existing FIGS and Heuwetter documents are currently protected by his fifth amendment privilege against self-incrimination.

### 3. *Documents created by the client for the attorneys or by the attorneys*

■■■ Savage contends that documents created by his firm for Heuwetter or any of the entities listed in the subpoena that are his clients, and a number of communications from his clients, are protected by either the attorney-client privilege [7] or the work product privilege.[8] In determining whether these privileges shield evidence from the grand jury, the Court must keep in mind a number of principles besides the elements outlined in notes 7 and 8 *supra.* First, as noted above, the individual asserting the privilege has the burden of establishing all the requisite elements of the privilege. Second, communications that enable or aid the client to commit a tort or crime, regardless of the attorney's good faith, are not protected. Third, tasks that an attorney performs for a client relating to tax work are often not of a legal nature, but amount to accounting or business services.

■■■ With the above in mind, the Court has concluded that on the basis of the documents before it, the movants have not established that any of the documents are privileged. Accordingly, the movants are instructed to submit all the documents which they contend are covered by the attorney-client privilege or the work product privilege to the Court for an *in camera* review. These must be submitted to the Court within two weeks of the date of this opinion. Accompanying the documents should be an affidavit that lists all the documents. The list should specify for each document: the client; the date of the communication or preparation of the document; the addressee, if any; the author; and a brief description of the document, including the privilege which the document falls under.[9] Of course, any documents that are concededly not privileged should be produced immediately.[10]

---

**7.** The elements necessary to establish a claim of attorney-client privilege are settled:
> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived.

*United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961) (citing 8 *Wigmore on Evidence* § 2292, at 554 (McNaughton ed. 1961)). In federal court this privilege has been extended to an attorney's written communications to a client. *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980).

**8.** Work product material, i.e. documents that contain attorney notes, drafts, and other work-

ing papers, are shielded from production if the material "[a]t its core ... shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975).

**9.** The Government should also submit an affidavit from the IRS delineating the alleged tax violations. *See In re Grand Jury Subpoena, supra,* 438 F.Supp. at 1178 n. 7.

**10.** The Court notes that there are a number of miscellaneous documents within the scope of the subpoena that the attorneys claim are covered by their clients' constitutional right to privacy. For example, Forster & Kadish contend that a number of documents relating to Mrs.

Finally, Savage and Forster & Kadish note that the subpoenas have no time limits. This is unreasonable. Each will be modified to require the production of documents existing on or before the date of service of the subpoenas. With this minor revision, the Court finds that the subpoenas served on the attorneys are not overly broad or unreasonable.

So ordered.

Heuwetter are private materials. *See* Putzel Aff. at ¶ 11. The Government does not contest this. *See* Government Memo., at 46. The Govern-ment and the movants should submit a stipulation to the Court outlining which documents fall into this category.