**In re GRAND JURY SUBPOENAS ISSUED TO THIRTEEN CORPORATIONS.**

**UNITED STATES of America, Appellant,**

v.

**Richard ROE, Appellee.**

**No. 85–1154.**

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 1985.

Decided Oct. 15, 1985.

Nathan Lewin, Washington, D.C. (Miller Cassidy, Larroca & Lewin, Stephen L. Braga, Washington, D.C., of counsel), for appellee.

Stuart E. Abrams, New York City, Asst. U.S. Atty. for the S.D. of N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., Paul E. Summit, New York City, of counsel), for appellant.

Before FEINBERG, Chief Judge, and KEARSE and CARDAMONE, Circuit Judges.

FEINBERG, Chief Judge:

The government appeals from an order of the United States District Court for the Southern District of New York, Vincent L. Broderick, J., granting a motion to quash grand jury subpoenas duces tecum issued to thirteen corporations. The subpoenas called for the production of corporate records. Richard Roe [1] moved to quash on fifth amendment grounds. For the reasons stated below, the district court's order must be reversed.

## I.

Pursuant to its investigation of possible tax evasion and other offenses, a grand jury in the Southern District issued subpoenas duces tecum to thirteen New York corporations calling for the production of enumerated corporate records.[2] These corporations, referred to as the "Z Companies," were suspected of issuing fraudulent invoices for large amounts to the target of

---

1. The parties have agreed to proceed under pseudonyms. Appellee will be referred to as Richard Roe and the other individuals and corporations will also be identified by pseudonyms.

2. The subpoenas called for the production of the following records, for the period 1979–1983:
 1. all sales invoices
 2. all purchase orders
 3. sales journals
 4. accounts receivable ledger
 5. general ledger/general journal

6. all corporate bank records to include bank statements, deposit slips, and cancelled checks
7. proof of delivery of merchandise sold, all shipping tickets and bills of lading
8. copies of income tax returns for the periods 1979 through 1983
9. list of all stockholders and/or corporate officers
10. name, address and telephone number for the corporate accounts for the above mentioned years.

the grand jury investigation. Roe was connected to the corporations through bank records.

Counsel for Roe accepted service of the subpoenas on Roe's behalf;[3] thereafter, Roe moved to quash them. In March 1985, Judge Broderick held an evidentiary hearing on the motion to quash. An IRS agent testified as to the scope of the grand jury's investigation and the manner in which Roe and the Z Companies were connected to that investigation. The government then introduced bank records listing Roe as an authorized signatory on 23 corporate accounts and, in some cases, describing him as an officer. Officials from three banks testified concerning Roe's extensive involvement with the banking affairs of the corporations, although none had specific evidence of Roe's status as an officer, director or shareholder of any of the Z Companies. A rental agent also testified that he had dealt with Roe in securing rental payments and considered him to be the "principal" of several of the corporations.

Roe did not testify or call witnesses on his behalf, although he later introduced certificates of dissolution for twelve of the corporations. These documents identified an individual other than Roe—referred to as John Doe—as president, director and shareholder. We are told that Doe is a Swiss citizen who does not reside in the United States. The bank officials testified that Doe's name appeared as an authorized signatory on a number of the corporate accounts; one official recalled seeing Doe in the bank on a few occasions. Roe's son-in-law, daughter and two individuals, other than Doe, were also mentioned as transacting business on behalf of the corporations.

In the district court, Roe argued that the government's evidence established only his connection with the banking affairs of the corporations and that the records subpoenaed went well beyond banking records. He also argued that because of the government's lack of knowledge about the records of the Z Companies, his production and authentication of the documents would be testimonial in nature, that these acts could incriminate him and that he was entitled to claim his fifth amendment privilege. The government maintained that the corporations had been properly served through service of the subpoenas on Roe. This being the case, the government insisted that it was entitled to have someone produce the records on the corporation's behalf or testify that such records did not exist.

In April, Judge Broderick announced his decision to quash the subpoenas. The apparent basis for his ruling was that production by Roe, under circumstances where the existence and authenticity of the documents were not foregone conclusions, would be self-incriminatory. He cited the government's lack of information about the documents sought and its unwillingness to immunize Roe in order to obtain the documents. This appeal followed. The order quashing the subpoenas has been stayed pending appeal; Judge Broderick also ordered that the documents subpoenaed were not to be moved, transferred or destroyed.

## II.

After the briefs in this appeal were filed, a panel of this court decided *In re Two Grand Jury Subpoenae Duces Tecum, One Dated January 28, 1985, The Other Undated,* 769 F.2d 52 (2d Cir.1985) (*In re Two Grand Jury Subpoenae*), which is dispositive of many of the issues presented here. In that case, this court affirmed a district court's order denying a motion to quash two grand jury subpoenas duces tecum directed to a corporation.[4] The court

---

3. There is apparently some disagreement as to the capacity in which counsel for Richard Roe accepted the subpoenas. Although he maintains that the subpoenas were accepted only on behalf of Roe as an individual, counsel for Roe admitted that service was accepted "for whatever it was." Because we find that the corpora-

tion could effectively be served through service on Roe, we do not need to resolve this dispute.

4. One subpoena was addressed to the corporation and the other to the custodian of corporate records. The district court limited the subpoenas, however, which "had the effect of directing

relied on the well-established rule that a corporate representative, acting in his or her representative capacity, cannot claim a fifth amendment privilege against the production of corporate documents. Id. at 56, *citing Bellis v. United States,* 417 U.S. 85, 88–89, 100, 94 S.Ct. 2179, 2183–2184, 2189, 40 L.Ed.2d 678 (1974); *In re Grand Jury Subpoenas Duces Tecum (Saxon Industries),* 722 F.2d 981, 986 (2d Cir.1983). The only exception to this rule may occur when an individual is *personally* compelled to produce and authenticate corporate records and those acts are self-incriminatory. *In re Two Grand Jury Subpoenae,* supra, 769 F.2d at 57. The court emphasized, however, that "[t]here simply is no situation in which the fifth amendment would prevent a *corporation* from producing corporate records, for the corporation itself has no fifth amendment privilege." Id. at 57 (emphasis supplied), citing *United States v. Barth,* 745 F.2d 184, 189 (2d Cir.1984), *cert. denied,* ——— U.S. ———, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985).

We conclude that *In re Two Grand Jury Subpoenae* requires reversal of the district court's order. The principals involved in these corporations have received the benefits of the corporate form and they must also accept its obligations, which include the unavailability for the corporations of a fifth amendment privilege against self-incrimination. A contrary holding would allow a corporation, whose controlling figures had involved it in criminal activity, to avoid production of corporate documents by virtue of that criminality, while all other corporations would have no such option. Since corporations have no fifth amendment privilege, this simply does not make sense.

As a preliminary matter, we find that the corporations were effectively served by service on Roe through his attorney. The district court did not make a specific determination on the issue of service, apparently because the judge quashed the subpoenas on other grounds. However, at oral argument, the judge did characterize Roe as "the major guru" of the corporations, and noted that "he is a perfectly appropriate person to serve with a subpoena." In any event, we have reviewed the evidence presented and find that it establishes that the corporations were properly served. A corporation may be served through an officer or agent explicitly or implicitly authorized to accept service of process. See Fed.R.Civ.P. 4(d)(3); *In re Electric & Musical Industries, Ltd., Middlesex, England,* 155 F.Supp. 892, 893 (S.D.N.Y.), *appeal dismissed,* 249 F.2d 308 (2d Cir.1957). Roe's involvement in the financial affairs of the corporations was sufficient to make him an agent on whom subpoenas could be served. *Koupetoris v. Konkar Intrepid Corp.,* 535 F.2d 1392, 1395–96 (2d Cir.1976) (service on owner's managing agent adequate service); *Boryk v. deHavilland Aircraft Co.,* 341 F.2d 666, 668–69 (2d Cir.1965) (service on the president of subsidiary adequate; label attached to the agent and lack of explicit authority to accept service not determinative).

The subpoenas were issued to the corporation, not to Roe. They do not mention him. Indeed, the government first attempted to serve John Doe, who is listed on some documents as an officer, but was unable to do so. Service was then made on Roe, as the other person known to be connected with the corporations. The records are the kind that corporations ordinarily maintain, and the subpoenas do not demand that Roe himself produce them. By directing the subpoenas to the corporations, the government must be satisfied with production by any representative of the corporations; strictly speaking, the proceedings are between the government and the corporations. Roe relies on two recent decisions of this court, but both are distinguishable. In *Saxon Industries,* supra, the subpoena was directed to an individual no longer connected with the corporation whose records were being sought, and in *In re Katz,* 623 F.2d 122 (2d Cir.1980), the sub-

them solely to the corporation." *In re Two*

*Grand Jury Subpoenae,* supra, 769 F.2d at 55.

poena was directed to an attorney. See *In re Two Grand Jury Subpoenae*, supra, 769 F.2d at 69 (discussing cited cases). Roe also relies on the recent in banc decision of the Third Circuit, *In re Grand Jury Matter (Brown)*, 768 F.2d 525, 526 (3d Cir.1985) (in banc), but in that case the subpoena was addressed to a named custodian. Indeed, the Third Circuit noted that "[r]ecords of collective entities still must be maintained, and their production can be compelled by a subpoena *duces tecum* addressed to the entity." Id. at 528.

*In re Two Grand Jury Subpoenae* also disposes of Roe's principal argument in support of the decision below. Roe urges a distinction between cases where the act of production adds little or nothing to the government's case, because the existence and authenticity of the corporate documents produced are "a foregone conclusion," and those where the act of production adds significantly to the sum total of the government's information, *Fisher v. United States*, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). While recognizing that a fifth amendment privilege is unavailable in the former situation, Roe argues that it can be asserted in the latter "unusual" case, because the act of production possesses significant testimonial aspects. In support of this distinction, Roe primarily relies on *United States v. Doe*, 465 U.S. 605, 613–14 & nn. 11–13, 104 S.Ct. 1237, 1243 & nn. 11–13, 79 L.Ed.2d 552 (1984), and decisions in this circuit. See, e.g., *In re Katz*, supra, *Saxon Industries*, supra. *In re Two Grand Jury Subpoenae* held that even the latter situation "does not relieve the corporation of its continuing obligation to produce the subpoenaed documents." 769 F.2d at 57. (citation omitted). In such cases, "the corporation must appoint some other employee to produce the records," or, if no employee could do so without incriminating himself or herself, "the corporation may be required to produce the records by supplying an entirely

new agent who has no previous connection with the corporation. . . ." Id.

In *In re Two Grand Jury Subpoenae* the court also rejected an expansive reading of *Doe*. The act-of-production privilege sustained in *Doe* with respect to the records of a sole proprietorship simply cannot be extended to encompass the production of corporate records. 769 F.2d at 57–58. *Doe* does not modify or overrule prior law creating a distinction for fifth amendment purposes between entities that have "a recognizable, juridical existence" separate from their members and those that do not. Id. at 58–59.

### III.

This case presents one issue not resolved by *In re Two Grand Jury Subpoenae:* whether a different rule should obtain where the corporations were dissolved prior to the issuance of the subpoenas.[5] Although the district court did not rely on the fact of dissolution in reaching its decision to quash the subpoenas, Roe maintains that dissolution is relevant because it means that the corporations no longer exist, which in turn means that any obligation to produce corporate documents falls upon him individually. Roe also argues that dissolution eliminates the option of having the corporations appoint someone for the purpose of producing the subpoenaed records, for whom the act of production would not be self-incriminating. See *In re Two Grand Jury Subpoenae*, supra, 769 F.2d at 57, citing *United States v. Barth*, supra, 745 F.2d at 189.

 We do not agree with Roe's analysis of the consequences of dissolution. Dissolution does not furnish a corporate representative any greater claim to a fifth amendment privilege. See *Bellis v. United States*, supra, 417 U.S. at 88–89, 97 n. 3, 94 S.Ct. at 2183–84, 2187 n. 3, citing *Wheeler*

---

**5.** Certificates of dissolution were introduced with respect to twelve of the thirteen corporations; counsel for both parties indicated their belief that the thirteenth was also dissolved. There is no indication that dissolution was in any way connected to the grand jury investigation.

*v. United States*, 226 U.S. 478, 489–90, 33 S.Ct. 158, 162, 57 L.Ed. 309 (1913), and *Grant v. United States*, 227 U.S. 74, 80, 33 S.Ct. 190, 192, 57 L.Ed. 423 (1913). Furthermore, under New York corporation law, a dissolved corporation does not cease to exist for all purposes. N.Y.Bus.Corp. Law § 1006(a) (McKinney 1963) (continuation for the purpose of winding up its affairs); *Independent Investor Protective League v. Time, Inc.*, 50 N.Y.2d 259, 428 N.Y.S.2d 671, 406 N.E.2d 486 (1980). On the contrary, a dissolved corporation "may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it." N.Y.Bus. Corp.Law § 1006(a)(4). Dissolution does not "affect any remedy available to or against such corporation ... for any right or claim existing or any liability incurred before such dissolution." Id. § 1006(b). Thus, applicable state law establishes a corporation's continuing obligation to respond to subpoenas relating to pre-dissolution conduct as well as its amenability to sanctions should it fail to do so.

■ If, in order to respond to the subpoenas, it becomes necessary for the corporations to appoint an agent to produce and authenticate the records subpoenaed, we believe that § 1006 would empower the corporations to make the appointment. Should the corporations prove unable or unwilling to take this action, the district court could order them to do so. See *United States v. Barth*, supra, 745 F.2d at 189. Moreover, another section of the corporation law suggests an alternative means of securing the records. Section 1008(a)(7) provides for special proceedings before the state supreme court and specifically allows the court to make appropriate orders relative to "[t]he disposition ... of records, documents and papers of the corporation." It may also be that under state or federal law there are other sound bases for dealing with the situation here by appointment of an agent to produce corporate records. We leave such questions for exploration, if necessary, by the district court on remand.

We recognize that dissolution adds to the difficulties inherent in the appointment process in closed corporations. Roe has indicated that the persons connected with the corporations, other than Doe, are relatives and that their act of production poses the same danger of incrimination. Even if the corporation were able to appoint some third party to produce and authenticate these records, he claims that he would have to inform the agent that these were the records sought and that they were authentic, which could then be used against him.

■ However, the essence of *Fisher* and *Doe* is protection against "compelled testimonial self-incrimination," 425 U.S. at 399, 96 S.Ct. at 1575, by the person claiming the privilege. If one of Roe's relatives or associates complies with the subpoena, any information obtained from Roe would not have been extracted under an order requiring him to testify. Moreover, at least one person other than Doe and apparently unrelated to Roe has been associated with the corporations; he is referred to as the secretary of the corporations on some documents. This person might be able to respond to the subpoenas on the corporation's behalf, without incriminating himself. Thus, we do not share Roe's view that appointment of an outsider would necessarily involve Roe in self-incrimination. As we said in *In re Two Grand Jury Subpoenae*, supra, 769 F.2d at 57 "[Roe] himself is not being required to testify through any personal act of production." In any event, dissolution does not alter the fact that the government is entitled to compliance with the subpoenas issued to the corporations. Someone representing the corporations or an outside agent appointed for this purpose must produce the existing records subpoenaed.

The government insists that, if the subpoenaed records do not exist, Roe or some other corporate representative can be required to testify to that fact and cites *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 316–18 (2d Cir.1979) in support of this contention. We are unsure of

the status of this case after *Doe,* but under the reasoning of *In re Two Grand Jury Subpoenae,* we do not need to reach this issue at this time.

We reverse the order quashing the subpoenas and direct the district court to enforce the subpoenas.